YAROSH, SHERIFF, APPELLEE, *v.*
BECANE ET AL., APPELLANTS.
YAROSH, SHERIFF, APPELLANT, *v.*
JURICH ET AL., APPELLEES.

[Cite as Yarosh v. Becane (1980), 63 Ohio St. 2d 5.]

(Nos. 79-88 and 79-879—Decided July 2, 1980.)

8

*Mr. Vincent E. Gilmartin,* prosecuting attorney, and *Mr. John A. Kicz,* for appellee in case No. 79-88 and appellant in case No. 79-879.

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee, Mr. James E. Melle* and *Mr. Robert J. Walter,* for appellants in case No. 79-88 and appellees in case No. 79-879.

CELEBREZZE, C. J.   All the deputies were hired by the sheriff pursuant to R. C. 325.17. Sheriff Yarosh argues that because R. C. 325.17 gives the sheriff authority to hire and fire deputies, such hiring and firing is not required to be made as would normally be required for a civil service position.

The power to hire and fire deputies however is subject to Section 10, Article XV of the Ohio Constitution which states:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

The General Assembly has enforced Section 10, Article XV, by enacting R. C. Chapter 124. This Chapter provides a civil service system which is designed to fill positions based on merit and fitness ascertained, as far as practicable, by examination. The sheriff's power to hire and fire deputies pursuant to R. C. 325.17 is subject to the civil service rules contained in R. C. Chapter 124.

R. C. 124.11 divides the civil service into the classified and unclassified service. Positions in the classified service are those for which merit and fitness can be determined by examination. Employees in the classified service can only be removed for good cause and only after the procedures enumerated in R. C. 124.34 and the rules and regulations thereunder are followed. Positions in the unclassified service require qualities that the General Assembly has deemed are not determinable by examination. Employees in the unclassified service do not receive the protections afforded employees in the classified service.

The deputies involved in the case at bar were considered to be unclassified by Sheriff Yarosh. Sheriff Davis also apparently considered the positions to be unclassified due to his failure to appoint deputies based on the results of examinations. Sheriff Yarosh argues that the State Personnel Board of Review has no jurisdiction to hear appeals of removals of employees deemed unclassified by their appointing authorities.

Pursuant to R. C. 124.03(A), the State Personnel Board of Review has the power to "[h]ear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification; the board may affirm, disaffirm, or modify the decisions of the appointing authorities

or the director of administrative services, as the case may be, and its decision is final." The board is empowered to hear appeals from removal orders of employees in the classified service under R. C. 124.34.

The object of the civil service system is to provide stability of employment in the public sector. An essential element of the system is review of removals by the board. Such review offers the employee a chance to be heard in a relatively simple and expeditious proceeding.

An appointing authority cannot deny employees this right of review merely by declaring them to be unclassified. The board has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities. In the case at bar the board determined that the deputies were in the classified service.

R. C. 124.11(B) defines the classified service as all positions not specifically in the unclassified service. R. C. 124.11(A) enumerates the positions in the unclassified service.

In R. C. 124.11(A), the General Assembly listed many positions for which testing is not practicable. In R. C. 124.11(A)(9), the legislature enacted a catch-all provision which includes in the unclassified service the following:

"The deputies and assistants of elective or principal executive officers authorized to act for and in the place of their principals, or holding a fiduciary relation to such principals and those persons employed by and directly responsible to elected county officials and holding a fiduciary or administrative relationship to such elected county officials, and the employees of such county officials whose fitness would be impracticable to determine by competitive examination***."

R. C. 124.11(A)(9) recognizes that there are certain positions in the public service in which intangible personal qualities are essential prerequisites to appointment. Such qualities are impossible to ascertain by examination. Deputies or assistants who are employed by and are directly responsible to an elected county official and who are in a fiduciary or administrative relationship with that official are in such positions.

Sheriff Yarosh contends that the deputies in question are unclassified because they were directly responsible to him and

were in a fiduciary or administrative relationship with him. If the deputies are unclassified, the procedural and substantive safeguards of R. C. 124.34 would not be available to them and the terminations would be valid. The deputies, however, were neither in a fiduciary nor administrative relationship with the sheriff.

Pursuant to R. C. 311.05, a sheriff is responsible for the neglect of duty or misconduct in office of his deputies. Nonetheless, as this court clearly stated in *In re Termination of Employment* (1974), 40 Ohio St. 2d 107, deputy sheriffs are not in fiduciary relationships with their sheriffs by virtue of R. C. 311.05. We stated, at page 115, that all deputy sheriff positions "are positions of great importance and responsibility, but they do not impose the duties required of a fiduciary such as a trustee, a lawyer, an accountant, or a guardian. A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."

A deputy is in a fiduciary relationship with a sheriff when the duties the deputy is required to perform for the sheriff are duties that the sheriff could not be expected to delegate to the average deputy with knowledge of proper police procedure for that task. In such cases special trust and confidence is required. If the duties are such that the average deputy with knowledge of the proper procedure can be expected to perform them, fitness for the position may be determined by examining the deputy's knowledge of the procedure.

Routine police work is not fiduciary in nature. Discretion may have to be exercised, but it is discretion which any qualified deputy would be expected to exercise. For example, routine police work often involves the determination of probable cause in making searches and seizures. Any deputy having knowledge of this requirement is expected to make a proper decision. The prerequisite knowledge is examinable and an examination thereon is sufficient to qualify a person for the position.

Where no discretion is involved and where tasks are clearly routine, a fiduciary relationship clearly does not exist. In the case at bar, for example, observation of prisoners, feeding

them, and administering medication to them, clearly are non-discretionary tasks which cannot be used to establish a fiduciary relationship.

The handling of property and money belonging to others does not place a deputy in a fiduciary relationship with a sheriff. Deputies are expected to handle property and money of others without converting or damaging such property. A knowledge of the proper procedure to use in handling property which is examinable is sufficient to qualify a deputy for such a task.

Sheriff Yarosh argues that the fact that the deputies handled money and property of others in the course of investigations placed them in a fiduciary relationship with him. As discussed above, such duties do not place a deputy in a fiduciary relationship with his sheriff. There are no other duties which place these deputies in a fiduciary relationship with the sheriff.

A deputy is in an administrative relationship with a sheriff when the duties the deputy is required to perform for the sheriff are such that the sheriff must rely on the deputy's personal judgment and leadership abililties. These qualities are highly subjective in nature and cannot be examined in any practical manner. If the sheriff could not expect a deputy with proper knowledge to supervise subordinates, no administrative relationship exists.

Ordinarily, a deputy or assistant in charge of formulating official policy or in charge of carrying out that policy in the supervision of the daily activities of subordinates is in an administrative relationship with a county official. A county official can only give such tasks to someone he feels has strong leadership and judgment abilities. It is not expected that the average deputy or assistant has the ability to perform such tasks.

The fact that a deputy may temporarily supervise an investigation because he is the ranking officer on the scene of a crime or accident or may pass on orders from superiors to subordinates does not place a deputy in an administrative relationship with a sheriff. Any deputy may be expected to relay orders or if he or she possesses sufficient knowledge of police procedure to direct an on-the-scene investigation. The basic

knowledge required is testable; exceptional leadership and judgment ability is not required.

Sheriff Yarosh's only ground for asserting that some of the deputies were in an administrative relationship with him is that evidence presented before the board of review indicated they would sometimes supervise investigations as ranking deputies on the scene of a crime or accident and that some relayed orders. Such duties are not sufficient to create an administrative relationship.

We find that the deputies involved in the case at bar were neither in a fiduciary nor an administrative relationship with their sheriff. The positions they held were in the classified service as defined in R. C. 124.11(B).

Section 10, Article XV, requires that positions be filled by competitive testing as far as practicable. In enacting R. C. Chapter 124, the General Assembly provided the procedure for filling positions in the classified civil service by competitive testing. Nonetheless, as in the case at bar, employees are appointed to positions in the classified service without taking examinations. The final question before this court concerns the status of employees who are not appointed based on competitive examination results.

In *State, ex rel. Alford,* v. *Willoughby* (1979), 58 Ohio St. 2d 221, we held that employees in the unskilled labor class were entitled to civil service protection even though they had not taken examinations. The classified civil service is divided into the competitive class and unskilled labor class. Deputies are in the competitive class. The examination process is somewhat different for the two. *Alford,* however, does aid us in deciding the rights of employees in the competitive class who have not been appointed based on examination results.

R. C. 124.11(B)(2) provides in part that:

"The unskilled labor class shall include ordinary unskilled laborers. Vacancies in the labor class shall be filled by appointment from lists of applicants registered by the director. The director or the commission shall in rules require an applicant for registration in the labor class to furnish such evidence or take such tests as the director deems proper with respect to age, residence, physical condition, ability to labor, honesty, sobriety, industry, capacity, and experience in the work or

employment for which he applies. Laborers who fulfill the requirements shall be placed on the eligible list for the kind of labor or employment sought, and preference shall be given in employment in accordance with the rating received from such evidence or in such tests."

In *Alford* we held that the employees were entitled to civil service protection because the civil service commission had failed to provide rules regarding appointments into the unskilled labor class. We stated that the commission, which was to provide such rules under R. C. 124.11(B)(2), could not assert the failure of the employees to take examinations when the failure was the result of the commission's neglect of its statutory duty.

In the competitive services the Director of Administrative Services is responsible for administering examinations and for making eligibility tests, pursuant to R. C. 124.27 which provides:

"The head of a department, office or institution, in which a position in the classified service is to be filled, shall notify the director of administrative services of the fact, and the director shall, except as otherwise provided in this section and sections 124.30 and 124.31 of the Revised Code, certify to the appointing authority the names and addresses of the three candidates standing highest on the eligible list for the class or grade to which said position belongs* * *."

R. C. 124.27 placed a statutory duty on the sheriff herein, which he neglected. As with the civil service commission in *Alford,* the sheriff cannot assert the failure of the employees to take examinations when the failure is the result of his neglect of his statutory duty.

R. C. 124.30 provides a formal process for provisional appointment based on non-competitive examinations. The process begins with the appointing authority's notification pursuant to R. C. 124.27. Pursuant to R. C. 124.271, after two continuous years of provisional status in the classified service during which no competitive examination is held, a provisional employee becomes a permanent appointee. All the deputies in the case at bar had served over two years in the sheriff's department at the time they were removed.

A deputy who is not appointed to a position in the

classified service due to the neglect of a sheriff to initiate the proper appointment procedure pursuant to R. C. 124.27 is, at the very least, a provisional employee in the classified service at the time of his appointment, and after two years of such service attains permanent status pursuant to R. C. 124.271. Once a deputy attains permanent status, a sheriff cannot remove him without following the procedures for such removals under R. C. 124.34.

In the cases of the 12 deputies who were notified of their terminations by letter dated December 27, 1976, it is stipulated that the procedure required by R. C. 124.34 was not followed. In these cases the State Personnel Board of Review was correct in reversing the removals and ordering reinstatement.

In the cases of Jurich and Albright some attempt was made to comply with R. C. 124.34. The only evidence presented by Yarosh was an admission by Albright of the existence of a federal civil rights case conviction and by Jurich of some past suspensions. Absolutely no details were presented. The State Personnel Board of Review did not err in finding that Yarosh failed to produce sufficient evidence to sustain the removals.*

Accordingly, the judgments of the Court of Appeals for Trumbull County in case No. 79-879 are affirmed, and the judgment of the Court of Appeals for Mahoning County in case No. 79-88 is reversed.

In case No. 79-88
*Judgment reversed.*
In case No. 79-879
*Judgments affirmed.*

HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

P. BROWN, J., dissents.

---

\* The Court of Appeals for Mahoning County ordered the board to allow Yarosh to present more evidence in the case of Albright. However, Yarosh had ample opportunity to litigate these issues before the board in the original proceeding. Unlike the situation in *Pratt* v. *Coller* (1976), 46 Ohio St. 2d 88, there is no reason for granting a new hearing. In *Pratt* we required the board to rehear the case because our disposition of *In re Termination* had changed the law. No such rehearing is required in the case at bar.