SUSO, Appellant,

v.

OHIO DEPARTMENT OF DEVELOPMENT, Appellee.

[Cite as *Suso v. Ohio Dept. of Dev.* (1993), 93 Ohio App.3d 493.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–474.

Decided Dec. 28, 1993.

*Ball, Noga & Tanoury* and *Steven L. Ball,* for appellant.

*Lee Fisher,* Attorney General, and *Christopher B. McNeil,* Assistant Attorney General, for appellee.

PETREE, Judge.

This matter is before this court upon the appeal of appellant, Susan Suso ("Suso"), from a judgment of the Franklin County Common Pleas Court. The trial court had affirmed an order of the State Personnel Board of Review ("SPBR"), dismissing the appeal of Suso's termination as Development Specialist Administrator with the Ohio Department of Development ("DOD"). That order, in summary, determined that Suso was a member of the unclassified civil service and was justly terminated at will by the DOD. Suso argued that the position she held with the DOD was a classified position.

In addition, there is before this court a motion to dismiss Suso's appeal, filed by the DOD, for lack of subject matter jurisdiction. In *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 17 O.O.3d 3, 406 N.E.2d 1355, paragraph two of the syllabus, the Supreme Court held that the SPBR had jurisdiction over appeals from the removal of an employee if it determines that the employee is in the

classified service, regardless of how he or she has been designated by the appointing authority. Therefore, the sole question before this court is whether Suso's position was in the classified service. If so, the SPBR had jurisdiction over the appeal. If not, the SPBR had no jurisdiction over the appeal, and was correct in its order of dismissal.[1]

As to this court's jurisdiction to hear Suso's appeal, it is stated in *In re Termination of Emp.* (1974), 40 Ohio St.2d 107, 110, 69 O.O.2d 512, 513–514, 321 N.E.2d 603, 606:

"Appeals from orders of the board are governed by two separate statutes. R.C. 119.12 proves that:

" 'Any party adversely affected by any order of an agency * * * may appeal to the Court of Common Pleas of Franklin County * * *.'

"R.C. 119.12 is a general statute providing for appeals from orders of various administrative agencies, and applies to all orders of the board. * * * "

Suso's appeal of the unclassified status determination thus lies through R.C. 119.12 to the Franklin County Court of Common Pleas and to this court. Accordingly, we overrule the DOD's motion to dismiss this appeal.

From her dismissal, Suso sets forth the following assignments of error:

"I. The lower court erred in concluding that reliable, probative, and substantial evidence supported the board's finding that appellant was a 'technical' and 'professional' employee per § 122.11, Ohio Rev.Code.

"II. The lower court erred in concluding that reliable, probative, and substantial evidence supported the board's finding that appellant was a 'manager' for purposes of § 122.42(B)(8) and 122.64(B)(5), Ohio Rev.Code.

"III. The lower court erred in concluding that the board did not exclude reliable, substantial, and probative evidence at the Chapter 119 Ohio Rev.Code hearing.

"IV. The lower court erred by not remanding the cause to the board for bona fide findings of fact.

"V. The lower court erred by applying an erroneous standard of review, and by failing to state the reliable, probative, and substantial evidence which the court believes to have supported the board's finding.

---

1. Suso has not claimed that her termination was unconstitutional. See *Branti v. Finkel* (1980), 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574. As a consequence, the sole issue before this court is whether the duties performed by Suso placed her within the unclassified service pursuant to R.C. 122.11, 122.42(B)(8), or 122.64(B)(5).

"VI. The lower court erred in concluding that the board's order was consistent with the law."

Suso began her tenure with the Northeast Ohio office of the Economic Development Division of the Ohio Department of Development on July 11, 1983. On that date, Suso was hired as a Development Specialist 4 and was assigned to the unclassified service. Suso was not required to take a competitive or noncompetitive examination through either the DOD or the Department of Administrative Services ("DAS").

Suso's classification as Development Specialist 4 later became known as Development Specialist Administrator. Timothy Jochim, the person who hired Suso and functioned as her immediate supervisor for the first six months of Suso's tenure with the DOD, assumed that the position was in the classified service, but never discussed the classified or unclassified status of the position with Suso.

Suso's employment with the DOD continued until February 21, 1991, at which time the DOD terminated her employment as Development Specialist Administrator, a position that the DOD considered to be exempt from the classified service pursuant to R.C. 122.11. No reason for the termination was given. As the DOD considered Suso's position to be exempt from the classified service, the procedures required in R.C. Chapter 124 to terminate an employee in the classified service were not used.

Suso appealed her termination to the SPBR, arguing that her position was in the classified civil service. The matter was referred to an administrative law judge ("ALJ"). Hearings were held on February 25 and March 9, 1992, for the purpose of determining whether Suso's position was classified or unclassified.

After hearing testimony and examining evidence at the hearing, the ALJ determined that Suso was a "professional" and "technical" employee pursuant to R.C. 122.11, thereby finding that Suso's position was in the unclassified service and, thus, terminable at will. Additionally, the ALJ determined that Suso functioned as the manager of the Northeast Ohio office for the DOD, thereby finding that Suso's position was in the unclassified service pursuant to R.C. 122.42(B)(8) and 122.64(B)(5). These determinations are set forth in the reports and recommendations of the ALJ issued on May 12 and July 24, 1992, respectively. The ALJ recommended that Suso's appeal be dismissed because the SPBR does not have jurisdiction over appeals of removals from positions in the unclassified service.

Suso submitted objections to the ALJ's report. The SPBR subsequently adopted the ALJ's report and recommendation and ordered the case dismissed for lack of jurisdiction. Suso appealed this order to the Franklin County Court

of Common Pleas pursuant to R.C. 119.12. The court found the record contained sufficient evidence to support the determination that Suso was an unclassified employee and so held that the order of the SPBR was supported by reliable, probative and substantial evidence and was in accordance with law. Suso has timely appealed the trial court's decision to this court.

The civil service system in the state of Ohio is divided into the classified and the unclassified service. R.C. 124.11. Classified civil servants attain their employment status through a merit system based primarily on competitive examination. R.C. 124.23. Pursuant to R.C. 124.03(A), the SPBR has the power to hear appeals of employees in the classified state service from final decisions of appointing authorities relative to the discharge of those employees.

Positions in the unclassified service require qualities that the General Assembly has deemed to be undeterminable by examination. *Yarosh, supra*, 63 Ohio St.2d at 9, 17 O.O.3d at 5–6, 406 N.E.2d at 1358–1359. Employees in the unclassified service hold their positions at the pleasure of the appointing authority, may be dismissed from their employment without cause, and are afforded none of the procedural safeguards available to those in the classified service. See *Eudela v. Ohio Dept. of Mental Health & Mental Retardation* (1986), 30 Ohio App.3d 113, 30 OBR 213, 506 N.E.2d 947; *Huber v. Celebrezze* (1984), 14 Ohio App.3d 299, 14 OBR 356, 471 N.E.2d 181.

R.C. 124.11 sets forth the general statutory distinction between the classified and the unclassified civil services. In addition, this statutory section sets forth which positions are to be considered classified and which are to be considered unclassified. *Johnson v. State* (1977), 54 Ohio Misc. 7, 11, 8 O.O.3d 248, 248, 375 N.E.2d 1268, 1271. However, "R.C. 124.11 is not the final arbiter of whether a given position is in the classified or unclassified civil service. Rather, where there is language elsewhere in the Revised Code, expressly designating a certain position as being in either the classified or unclassified service or where there is language wherein the court can imply such legislative designation, then that language controls as to the classified or unclassified nature of the position."

In the case at bar, Suso was terminated pursuant to R.C. 122.11, a section of the Revised Code that denominates as unclassified those persons in the DOD who are considered "professional" or "technical" employees. Therefore, it is the language of R.C. 122.11 to which we must look to determine Suso's status as a classified or unclassified employee, rather than R.C. 124.11.

The ALJ found that Suso's position was not in\the classified service based upon the language in R.C. 122.11, which expressly designates that "professional" and "technical" employees employed by the Director of the DOD shall be considered unclassified. The ALJ also determined that Suso's position was to be considered

unclassified based upon the language in R.C. 122.42(B)(8) and 122.64(B)(5), which state that the Director of Development and the Deputy Director of Economic Development, respectively, may employ and fix the compensation of managers. The ALJ determined that the application of these two Revised Code sections to Suso's position placed that position in the unclassified service.

Upon review, the SPBR adopted the recommendation of the ALJ and dismissed Suso's appeal, finding that Suso's position with the DOD was exempt from the classified service. In making its determination, the SPBR used the standard set forth in *Yarosh, supra*, which provides that the duties of the employee, rather than the designation of the appointing authority, are determinative of whether the employee is classified or unclassified. The SPBR found that Suso was an unclassified employee based upon the evidence which showed that Suso's duties included both "professional" and "technical" aspects and that she functioned as the "manager" of the Northeast Ohio office of the DOD.

▆▆▆ Initially, we must determine the parameters of our review of this action. In an administrative appeal filed pursuant to R.C. 119.12, the trial court must review the agency's order to determine whether such order is supported by reliable, probative, and substantial evidence and is in accordance with law. In this review process, the trial court may consider the entire record, including the credibility of the witnesses and the weight and probative character of the evidence. The trial court may, to a limited extent, substitute its judgment for that of the administrative agency; however, the trial court must give due deference to the administrative resolution of evidentiary conflicts and, if the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the administrative body which had the opportunity to observe the demeanor of the witnesses and weigh their credibility. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268.

▆▆▆ An appellate court's role is more limited than that of the trial court reviewing the same order. While the trial court must examine the evidence, such is not within the purview of the appellate court. The appellate court's role in reviewing the determination of a court of common pleas on reliable, probative and substantial evidence is to determine if the lower court abused its discretion. *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 27 OBR 254, 500 N.E.2d 362, citing *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. Abuse of discretion implies a decision that is both without a reasonable basis and clearly wrong. *Angelkovski, supra*, at 161–162, 11 OBR at 243–245, 463 N.E.2d at 1282–1284. An abuse of discretion " * * * 'implies not merely error of judgment, but perversity of will, passion, prejudice,

partiality, or moral delinquency.' * * *" *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See *Rohde, supra.* Accordingly, our review is limited to a determination of whether the trial court abused its discretion and, in so doing, we may not substitute our judgment for that of either the trial court or the SPBR.

In support of the contention that Suso was an unclassified civil servant pursuant to R.C. 122.11, the DOD submitted evidence to establish that the position occupied by Suso had been designated as unclassified by the DOD and the DAS. The fact that a state employee is carried on the payroll as being in the unclassified civil service does not establish that classification. *Henslee v. State Personnel Bd. of Review* (1968), 15 Ohio App.2d 84, 86, 44 O.O.2d 206, 207–208, 239 N.E.2d 121, 122–123. *Yarosh, supra,* provides that the duties of the employee, rather than the designation of the appointing authority, are determinative of whether the employee is classified or unclassified. Therefore, it was incumbent upon the SPBR to focus its determination of whether Suso was a classified or unclassified employee on the definition of "professional" and "technical," and whether Suso performed job duties as described by those terms.

In her first assignment of error, Suso alleges that the trial court erred (abused its discretion) in concluding that reliable, probative and substantial evidence supported the board's finding that she was a "technical" and "professional" employee for purposes of R.C. 122.11, which speaks specifically to personnel in the DOD and reads:

"The director of the department of development may employ such technical and professional personnel, who shall be in the unclassified civil service, and such other personnel, who shall be in the classified civil service, as is necessary to carry out the provisions of sections 122.01 to 122.11, 122.17 and 122.18 of the Revised Code."

R.C. 122.11 does not provide us with a definition of either "technical" or "professional," nor does our research unearth any judicial determination construing these terms as used in R.C. 122.11. *Caygill v. Jablonski* (1992), 78 Ohio App.3d 807, 812, 605 N.E.2d 1352, 1355, states:

"When a term has not been defined by the legislative enactment in which it appears, by court decision or otherwise, it will be given its common, ordinary and accepted meaning in the context in which it is used. R.C. 1.42; *Baker v. Powhatan Mining Co.* (1946), 146 Ohio St. 600, 606, 33 O.O. 84, 87, 67 N.E.2d 714, 717."

Therefore, as there is neither a legislative nor a judicial definition of the terms "technical" and "professional" as they are used in R.C. 122.11, we turn to the common meaning of the words as defined in Black's Law Dictionary.

Black's Law Dictionary (5 Ed.1979) 1089, defines "profession" as:

"A vocation or occupation requiring special, usually advanced, education and skill; *e.g.* law or medical professions. Also refers to whole body of such profession.

"The labor and skill involved in a profession is predominately mental or intellectual, rather than physical or manual.

"The term originally contemplated only theology, law, and medicine, but as applications of science and learning are extended to other departments of affairs, other vocations also receive the name, which implies professed attainments in special knowledge as distinguished from mere skill."

Black's Law Dictionary (5 Ed.1979) 1312, defines "technical" as:

"Belonging or peculiar to an art or profession. Technical terms are frequently called in the books 'words of art.' * * * "

The ALJ determined that the testimony presented, evidence admitted, and post-hearing briefs submitted by the parties clearly demonstrated that Suso possessed and utilized technical and professional skills that were particularly useful in implementing the DOD's various programs with regard to public and private development.

■ Suso argued that a previous order of the SPBR, in the case of *Smith v. Ohio Dept. of Dev.*, No. 88–REM–11–0582, is dispositive as to the determination of her civil service status. In that case, the SPBR, without justification or findings, summarily found Bruce Smith, Suso's sometime supervisor, to be in the classified service. Smith's job description is not contained in the record to this court on appeal, nor is it a matter relating to this appeal and, therefore, offers no guidance as to the proper determination of Suso's status in the civil service system. No conclusions as to Suso's status as an unclassified civil servant can be drawn from the SPBR's determination that her supervisor was a classified civil servant, since it is not impossible to be an unclassified employee and be supervised by a classified civil servant.

■ Furthermore, the determination of Suso's classified or unclassified status must turn on those job duties actually performed by her in her unique position as manager of the Northeast Ohio regional office. It is well settled that the true test of an employee's status turns on the duties actually delegated and performed by the employee. *Yarosh* and *In re Termination, supra.* Therefore, the fact

that the SPBR found that the duties performed by Bruce Smith placed him in the classified service has no bearing on the determination of Suso's actual job duties.

Although Suso characterized the duties required of and performed by her as "not of a professional nature," the record is replete with testimony and evidence to the contrary.

Indeed, Suso came to the DOD with substantial experience in providing development assistance to both public and private sector entities. In addition, she possessed a Master of Science degree in economics, public administration, and geography from the London School of Economics and Political Science.

The classification specification describing the minimum class requirements for the position of Development Specialist Administrator held by Suso states in part: "Completion of graduate major program core coursework in assigned area (e.g., business administration, public administration, * * * city & regional planning) * * *." In addition, the classification specification also describes the job duties for Development Specialist Administrator, class number 66316, as follows:

"The expert level class works under administrative direction & requires extensive knowledge of economic & community development programs & regulations & business or public administration * * *."

Both the job requirements and the job duties described in the classification specifications require that an employee who holds the position of Development Specialist Administrator possess and utilize skills that are predominantly mental or intellectual, and are the result of professed attainments in special knowledge as distinguished from mere skill.

Suso's own testimony regarding her job duties belied her assertion that these duties were not of a "professional" or "technical" nature. She stated that she assisted the counties assigned to her in structuring committees to create their own economic development plans, and would search out answers to questions regarding what the counties needed to include in these plans. She also testified that she had knowledge of what the state needed to know in regard to grant documents for private businesses and local units of government. Both of these functions require the application of predominately mental and intellectual skills in order to assist these various entities in their search for grant and loan money for the purpose of economic development.

Further, the testimony of Howard Wise, Deputy Director of the Economic Development Division of the DOD also belied Suso's assertion that she was not a "professional" or "technical" employee within the DOD. Wise testified that his position involved the same duties as that of Suso, and that these duties included convincing a company that it should expand or relocate into Ohio by explaining available state programs to them, including grants, loans, job training programs

and tax incentive programs. Wise also testified that Suso had expertise in the state's financing programs, which involved assessing a company's financial history, current financial status, and future financial projections in order to determine a company's qualifications and creditworthiness with regard to a particular loan. This analysis involved determining the company's market and exploring the management of the company.

In addition, testimony from James Simpson, acting fiscal officer with the DOD, described Suso's duties as requiring insight into a project or a loan request to determine whether or not the project was a "good project." Simpson also testified that Suso's function in providing insight into a project involved considering facts about the management of the company, and its impact on the community. He also stated that Suso would consult with the Deputy Director of the DOD on major policy initiatives, such as how the various programs for economic development would impact the area in which Suso worked.

Simpson also testified that, contrary to Suso's assertion that her job duties involved no more than providing a packet of material developed by the DOD to her constituents, her role required her to continue her involvement with the program until the project closed—to "walk it all the way through * * * [the] controlling board." Also, if there was a problem with a particular loan request, such as a pre-application that did not fit clearly the program's criteria, Suso's role required that she try to convince the staff that the application for the loan request did fit and that the application process should proceed.

It is clear that Suso did perform job duties required by her position as Development Specialist Administrator that involved the application of professional and technical skills. The application of these skills required qualities that are difficult to ascertain by any type of examination. Suso utilized expertise that she had acquired both in her academic background and in her previous position as Economic Development Director for the Northeast Ohio Four County Regional Planning and Development Organization in her position with the DOD.

Further, as we must follow the dictates of *Conrad, supra,* and give due deference to the administrative agency's findings regarding the credibility and demeanor of the witnesses before it, we hold that Suso was a "technical" and "professional" employee pursuant to R.C. 122.11. Therefore, we find the ALJ's decision as to Suso's unclassified status to be supported by reliable, probative and substantial evidence.

Accordingly, we find Suso's first assignment of error not well taken.

As our decision with regard to Suso's first assignment of error is dispositive as to the determination that she was an unclassified employee and, therefore, terminable at will, we find it unnecessary to further examine whether her position

was exempted from the classified service as a "manager" for the DOD under either R.C. 122.42(B)(8) or 122.64(B)(5), which is raised by her second assignment of error. Our determination as to Suso's first assignment of error renders her second assignment of error moot. App.R. 12 requires that a court of appeals decide each assignment of error and give reasons in writing unless an assignment of error is rendered moot by a ruling on another assignment of error. Therefore, Suso's second assignment of error is considered moot—neither sustained nor overruled—and is not ruled upon due to the overruling of her first assignment of error.

 As to Suso's third assignment of error, the trial court did not abuse its discretion in concluding that the board did not exclude reliable, probative and substantial evidence at the R.C. Chapter 119 hearing. There is no evidence that the trial court's decision to exclude the testimony of Timothy Jochim and the proffered testimony as to the telephone conversation between Mike Eberly and Stratford Shields was "without a reasonable basis," *Angelkovski, supra,* nor does the trial court's decision exhibit a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Lancaster, supra.*

The trial court found that the ALJ had considered testimony regarding Suso's employment duties for the entire period of her employment with the DOD, and based its decision upon all of the evidence adduced at the hearing. In addition, the trial court found that the proffered testimony of Carnel Roberson was not improperly excluded, as the witness could not identify Shields and the conversation in which Roberson allegedly heard Eberly state that Suso was not "technical" was hearsay. Further, the trial court found that the testimony of neither Eberly nor Shields would have any probative value, as neither knew the actual job duties performed by Suso.

Accordingly, we find Suso's third assignment of error not well taken.

 In her fourth assignment of error, Suso alleges that the trial court erred by not remanding the cause to the board for bona fide findings of fact. While it is true that the trial court did not address this issue in its decision, an independent review of the record reveals an extensive recitation of factual findings by the ALJ in both the May 12, and July 24, 1992 reports and recommendations. As Suso provides this court with no valid reason why these findings of fact should not be considered "bona fide," we find her fourth assignment of error to be without merit and not well taken.

 Suso's fifth assignment of error alleges that the trial court applied an erroneous standard of review to the administrative agency's determination. The court's decision specifically states that "it is the duty of the common pleas court to review the record and determine whether the order of the agency is supported

by reliable, probative and substantial evidence and is in accordance with law. * * * Thus, if there is some reliable, probative and substantial evidence to support the finding that Suso was a 'technical,' 'professional' or 'managerial' employee, the board's order must be affirmed."

The trial court found, after reviewing the entire record, that there was sufficient evidence to support the board's finding that Suso was a technical and/or professional employee. Therefore, the trial court applied the correct standard of review to the administrative agency's determination.

Accordingly, Suso's fifth assignment of error is not well taken.

▪ In her sixth assignment of error, Suso alleges that the trial court erred in its conclusion that the board's order was consistent with the law. As previously noted, the language of R.C. 122.11 expressly places those persons who are considered "professional" or "technical" in the unclassified service. As we have previously determined in Suso's first assignment of error that the board was correct in its determination that Suso was a "professional" and "technical" employee for purposes of R.C. 122.11, the board's conclusion that this finding of "professional" or "technical" status placed Suso in the unclassified service is in accordance with law.

Accordingly, we find Suso's sixth assignment of error without merit and not well taken.

For the foregoing reasons, Suso's first, third, fourth, fifth and sixth assignments of error are overruled, and her second assignment of error is moot. We therefore affirm the judgment of the Franklin County Court of Common Pleas. The DOD's motion to dismiss the appeal for lack of subject matter jurisdiction is hereby overruled.

*Motion to dismiss overruled*
*and judgment affirmed.*

Bowman, J., concurs.

Peggy Bryant, P.J., dissents.

Peggy Bryant, Presiding Judge, dissenting.

Being unable to agree with the majority opinion, I respectfully dissent.

As the majority notes, appellant's supervisor, Bruce Smith, was found to be a classified employee. I find it difficult to conclude that, he being classified, appellant can be deemed an unclassified employee.

Decisions regarding the classification of persons in other positions at the Department of Development generally may not be relevant to appellant's appeal;

nonetheless, a decision of SPBR regarding her immediate supervisor cannot be ignored. Although consistency cannot always be achieved in decisions regarding all positions in the overall picture of state employment, consistency between appellant and her immediate supervisor is a desirable result. Whether or not the prior decision of SPBR regarding appellant's supervisor Smith is actually made a part of the record on appeal, it is a public document whose facts reflect that a consistent approach to appellant's and Smith's cases necessitates a finding that appellant is a classified employee.

Thus, I dissent.