Appellant, the University of Toledo ("university"), appeals from a judgment of the Franklin County Court of Common Pleas that reversed an order of the State Personnel Board of Review ("SPBR") which found it lacked jurisdiction to hear an appeal filed by appellee, Deborah Czechowski, because she was an unclassified employee.
Appellee was hired at the university in 1971 as a receptionist in the printing area, she was then promoted to clerk, assistant manager and, in 1977, was appointed manager of the printshop and mail services. On February 10, 1995, appellee was notified that her job was to be abolished effective April 30, 1995, as the result of a reorganization in the business services division of the university and she was offered a newly created position as marketing coordinator of print services at a reduced rate of pay with reduced responsibilities. On February 16, 1995, appellee filed a notice of appeal with the SPBR. Following a hearing and recommendation by its administrative law judge, the SPBR determined appellee was in the unclassified civil service, that it lacked jurisdiction to hear her appeal and, accordingly, dismissed her appeal. Appellee appealed that order to the Franklin County Court of Common Pleas, which reversed the decision of the SPBR.
Appellant sets forth the following assignments of errors:
"Assignment of Error No. 1:
 "The Trial Court Erred By Reversing The Order Of The State Personnel Board of Review Because Said Order Is Supported By Reliable, Probative, And Substantial Evidence And Is In Accordance With The Law.
"Assignment of Error No. 2:
 "The Trial Court Erred In Finding That Appellee Was Not A 'Business Manager' As That Term Is Intended By Ohio Revised Code Section 124.11
(A)(7)(a)."
Appellant's assignments of error are related and will be addressed together.
Appellant contends the trial court erred and abused its discretion when it found appellee was a classified employee who could appeal her job abolishment to the SPBR.
In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an agency's order to determine whether the order is supported by reliable, probative and substantial evidence, and is in accordance with law. In performing this review, the court of common pleas may consider the credibility of the witnesses, as well as the weight and probative character of the evidence. To a limited extent, this standard of review permits the court of common pleas to substitute its judgment for that of the administrative agency; however, the court of common pleas must give due deference to the administrative resolution of evidentiary conflicts. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108.
On appeal to this court, the standard of review is more limited. Unlike, 1 the court of common pleas, a court of appeals does not determine the weight of the evidence. In reviewing the decision of the court of common pleas, as to whether an agency's order is or is not supported by reliable, probative and substantial evidence, an appellate court's role is limited to determining whether or not the court of common pleas abused its discretion. Hartzog v. Ohio State Univ.
(1985), 27 Ohio App.3d 214. An abuse of discretion implies a decision that is both without a reasonable basis and is clearly wrong. Angelkovski v. Buckeye Potato Chips Co. (1983), 11 Ohio App.3d 159. This standard of review is limited to issues such as the weight of the evidence and credibility of witnesses, as to which the court of common pleas has some limited discretion to exercise. On questions of law, the court of common pleas does not exercise discretion and the court of appeals' review is plenary. Univ. Hosp., Univ. of Cincinnati College ofMedicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
Pursuant to R.C. 124.03, SPBR has jurisdiction to hear appeals relating to a job abolishment filed by employees in the classified civil service.
R.C. 124.11 (B) provides:
 "(B) The classified service shall comprise all persons in the employ of the state and the several counties, cities, city health districts, general health districts, and city school districts thereof, not specifically included in the unclassified service. * * *"
Appellant contends that appellee is a business manager and, therefore, is in the unclassified civil service pursuant to R.C. 124.11(A)(7)(a), which provides:
 "(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:
" * * *
 "(7)(a) All presidents, business managers, administrative officers, superintendents, assistant superintendents, principals, deans, assistant deans, instructors, teachers, and such employees as are engaged in educational or research duties connected with the public school system, colleges, and universities, as determined by the governing body of the public school system, colleges, and universities[.]"
In In re Termination of Employment (1974), 40 Ohio St.2d 107, the Ohio Supreme Court held that a job title alone is not conclusive as to whether an employee is within the classified or unclassified civil service; rather, the test is the job duties actually delegated to and performed by the employee. Id.
at 113. The fact that an employee is carried on the payroll as being in the unclassified service does not determine the propriety of that classification. Yarosh v. Becane (1980),63 Ohio St.2d 5, paragraph two of the syllabus; Henslee v. StatePersonnel Bd. of Review (1968), 15 Ohio App.2d 84.
In an administrative proceeding, the party asserting the affirmative bears the burden of proof. Chiero v. Bur. of MotorVehicles (1977), 53 Ohio Misc. 22, In Yarosh, the newly-elected sheriff of Mahoning County terminated the employment of a number of deputies. The deputies appealed to the SPBR, which ordered their reinstatement because the procedures set forth in R.C. Chapter 124 for the removal of classified employees were not followed. On appeal, the sheriff argued the deputies were unclassified and SPBR lacked jurisdiction to hear their appeals. The Ohio Supreme Court found the sheriff had failed to demonstrate the deputies were in the unclassified civil service and that there was a basis for their removal. Thus, the university had the burden to demonstrate appellee fell within one of the categories set forth in R.C. 124.11 (A).
The administrative law judge found that, as used in R.C.124.11(A)(7)(a), the term "business manager" was used "to describe a class of university managers." The administrative law judge further interpreted the language as "determined by the governing body of the * * * universities" to modify the term "business manager," so as to grant discretion to the university to determine what positions are serving the function of business manager and, therefore, are in the unclassified civil service. We disagree.
Based on a plain reading of the statute, all the positions specifically listed, which includes presidents, business managers, administrative officers, superintendents, assistant superintendents, principals, deans, assistant deans, instructors and teachers, are in the unclassified service, and the phrase "as determined by the * * * universities," modifies "such employees as are engaged in educational or research duties." Thus, unless appellee was performing the duties of a business manager, regardless of her job title, she was a classified employee.
The term "business manager" is not defined in R.C. 124.11
(A)(7) or in case law interpreting that statute. While the university has three employees (one each in the department of chemistry, college of arts and sciences, and college of education) specifically denominated as a business manager, appellant presented no evidence as to their job duties or how those duties compared with those performed by appellee. The university considers all non-hourly employees to be in the unclassified civil service, and appellee was a salaried, not hourly, employee.
In interpreting a statute, words are to be given their common, ordinary and generally accepted meaning. MutualBuilding Investment Co. v. Efros (1949), 152 Ohio St. 369. The American Heritage Dictionary (1979) 180, defines "business" as "[c]ommercial, industrial or professional dealings; the buying and selling of commodities or services." The dictionary, at 792, further defines "manager" as "[a] person who manages a business or other enterprise," and defines "manage" as "[t]o direct or control the use of; * * * [t]o exert control over; make submissive to one's authority, discipline, or persuasion."[1]
While the university is not engaged in private industry, nonetheless, printing services operates as a self-sustaining entity and is, in essence, a business. The issue presented is whether, based on the job duties delegated to and performed by appellee, appellant has demonstrated the printshop was subject to her direction, control and authority. No evidence was presented as to appellee's job duties with reference to mail services.
At the time appellee's job was abolished, printing and mail services were part of the university's department of business services headed by appellee's immediate supervisor, Nabelah Ghareeb; business services was a division of financial affairs headed by associate vice president, Scott Kelly; and financial affairs was, in turn, part of the division of administrative affairs headed by vice president, Thomas Repp. Printing services is a self-sustaining division of the university, that is, it is expected to meet its own expenses and not be subsidized by the university. The print shop serves all the printing needs of the university, its faculty and its students, and has four satellite operations located in various places across the university campus. Appellee was chairman of the committee that generated a report that recommended creating the satellite offices to better meet the university's needs.
Ghareeb prepared a job description for appellee's position that provides:
 "TITLE: MANAGER OF PRINT SHOP AND MAIL ROOM OPERATIONS
 "FUNCTION: Supervises the activities of the printshop and the mail room operation. Performs duties in compliance with Board policy, formulate standard specifications for the purchase and upgrade of printing and mail room equipment.
"DUTIES:
"1. Supervises the printshop and mailroom staff.
 "2. Develops, and maintains budgets and sales projections for the operation.
 "3. Maintains contact with other departments in the University community to insure that programs and services are adequately supported throughout the operation.
 "4. Cooperate with appropriate departments to insure all time-line for project requirements are met.
 "5. Keep abreast of all of the latest products and innovative concepts in the area of document generation and mailing systems.
 "6. Actively participate in committees that are beneficial to The University of Toledo community.
 "7. Represents The University of Toledo with various professional organization that will benefit the University of Toledo.
 "8. Serves in an advisory role to other departments, assisting them in their printing and mail service needs in an efficient and productive manner.
 "9. Performs other related duties that may be assigned by the Director."
Ghareeb testified that, in her capacity as manager of the printshop/mail services, appellee supervised nineteen people, including the supervisor of the printshop, Bill Davis, and the supervisor of mail services, Mary Richards. Appellee prepared evaluations for the printshop/mail service employees, which were, in turn, reviewed by Ghareeb, as was required by university policy. Appellee was responsible for scheduling employee work hours and, although appellee interviewed prospective employees, she was limited to making recommendations to Ghareeb and had no authority to hire employees.
The university budget office sent out packets to each department to prepare its annual budget requirements and, in this instance, the budget packets were sent to Ghareeb who, in turn, delegated the responsibility to appellee to prepare the budget for the printshop and mail services. Appellee was also responsible for reviewing monthly budgets during the year. Appellee had authority to sign requisitions for consumable items, such as paper, envelopes and ink, but could only suggest equipment purchases and did not have authority to purchase equipment. In order to best serve the needs of the university community, appellee met with various departments and served on various university committees. Appellee was responsible for keeping current with new products and processes.
While there is no doubt appellee had significant responsibilities in the day-to-day operation of the printshop/mail services, we cannot say the evidence supports a finding that she was a business manager. Although Ghareeb used the term "analytical" in conjunction with appellee's budget responsibilities, her actual responsibilities were to gather numbers, put the numbers in the form required by the university budget office, and, based on the past year's expenses, project increased costs for the coming year. A major portion of the printshop/mail services' budget consisted of fixed expenses such as salaries, fringe benefits and equipment lease payments. While the 1994-95 budget was $684,070, more than half of that was delegated to fixed costs. Further, once appellee had prepared the budget, it was subject to a line-item review by Ghareeb.
While appellee was, in fact, the chairman of the committee that recommended dividing the printshop operation into four satellite offices to better serve the university community, the draft report was submitted to Ghareeb for changes and approval, and presented to the university's vice president and president as a joint project of both Ghareeb and appellee.
It is somewhat unclear from the record, but, apparently, appellee could approve sick leave, vacation leave and overtime, although time off requests also had to be reported to Ghareeb. Appellee had no authority to determine salary or grant raises. Likewise, appellee had no authority to hire employees, but could only make a recommendation to Ghareeb. On one occasion, Ghareeb went directly to Mary Richards, the supervisor of mail services and one of appellee's subordinates, to recommend an employee to be hired, completely circumventing appellee. On another occasion when appellee was investigating a grievance filed by one of the mail service employees following an assault by a co-worker, Ghareeb again interviewed all of the personnel involved rather than relying on appellee's investigation. The discipline was eventually imposed by Mary Richards, not by appellee. Ghareeb attended all staff meetings and cancelled meetings scheduled by appellee. Because the campus bookstore offered fax services to students, appellee decided to stop offering a similar service through the printshop, as it was time consuming for printshop employees and took away from their production time, but that decision was overruled by Ghareeb.
While appellee did keep up to date with new equipment and developments in the printing area, Ghareeb was actively involved in meetings with vendors. Appellee could only attend seminars on matters pertaining to her field if Ghareeb thought it a "good idea." (Tr. 203.)
Thus, based on the record before us, we cannot say appellee had control over or made the printshop and mail services submissive to her authority or discipline. Appellee was not a business manager for purposes of R.C. 124.11 (A)(7), and is in the classified civil service.
Therefore, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
LAZARUS, P.J., and BRYANT, J., concur.
[1] We note that R.C. 3319.03 creates the position of business manager in school districts whose duties are set forth in R.C.3319.04 and include care and custody of all school property, real and personal, except money; supervision of building construction, maintenance and repairs; the duty to advertise for bids and the purchase and equipment of supplies. Subject to approval of the board of education, the business manager may discharge non-educational employees. The business manager is also authorized to execute contracts necessary to carry out his duties.