THE STATE EX REL. MCCLARAN, APPELLANT, *v.* CITY OF ONTARIO, APPELLEE.

[Cite as *State ex rel. McClaran v. Ontario,*
119 Ohio St.3d 105, 2008-Ohio-3867.]

(No. 2007–2100—Submitted July 22, 2008—Decided August 7, 2008.)

---

Per Curiam.

{¶ 1} This is an appeal from a judgment denying a writ of mandamus to compel a city to reinstate a former police chief. Because the court of appeals erred in holding that a former police chief has or had an adequate remedy in the ordinary course of law by way of a civil-service appeal to challenge his removal, we reverse the judgment and remand the cause for further proceedings.

## Employment with City of Ontario

{¶ 2} In 1975, appellant, Timothy McClaran, began his employment with appellee, city of Ontario, Ohio, as a patrol officer. In 1988, McClaran was promoted to the position of Ontario Chief of Police and served in that position until June 30, 2006.

## Actions Concerning Potential Retirement

{¶ 3} Kenneth A. Bender became mayor of Ontario in January 2006. Shortly thereafter, the city safety director informed McClaran that he wanted McClaran to retire. The safety director advised McClaran that if he retired, the city would pay him until the end of June 2006. In response, McClaran drafted a counteroffer in which he requested that "by May 5, 2006 with payment due at that time calculated through June 30, 2006," the city council would enact a resolution to perform certain actions, including purchasing two years of service so that McClaran could obtain full retirement benefits.

{¶ 4} Mayor Bender initially rejected McClaran's counteroffer because the amount that McClaran sought as part of a retirement package "could not be approved," but the mayor later sought the city council's authorization to enter into a retirement agreement based on the terms of the counteroffer. The city council introduced, but did not pass, a resolution authorizing the mayor to enter into a retirement agreement with McClaran before the May 5, 2006 deadline specified in McClaran's counteroffer. By a May 24 e-mail, McClaran notified both the mayor and the city law director that he was withdrawing his counteroffer. The city council later passed the resolution.

{¶ 5} At a June 23, 2006 meeting with Mayor Bender, McClaran presented the mayor with a letter stating that he had decided not to retire. At that same meeting, Mayor Bender gave McClaran a letter purporting to formally accept McClaran's counteroffer as it had been modified during a conversation that McClaran had with a city consultant. During that conversation, however, the consultant's proposals had not been accepted by McClaran. The draft retirement agreement attached to the mayor's letter had been signed by the mayor but was not signed by McClaran. Pursuant to the draft, McClaran would retire effective June 30, 2006, and the city would purchase two years of military-service credit on his behalf.

### Separation from Employment

{¶ 6} On June 28, 2006, Mayor Bender advised McClaran not to return to work and indicated that McClaran would not have access to city buildings. That same day, the safety director sent a letter to the city auditor stating that McClaran's services were no longer needed. The locks to McClaran's office were changed.

{¶ 7} McClaran's employment with the city ended on June 30, 2006. The city never gave McClaran a removal order and did not file a removal order with the Ontario Civil Service Commission. McClaran did not appeal the termination of his employment as the city's police chief.

### Retirement Application and Payments

{¶ 8} After the city notified McClaran that he could no longer report to his job as police chief, McClaran applied for retirement with the Ohio Police & Fire Pension Fund. In his application, McClaran stated under oath that it was his "will and intent to apply for service retirement." The city purchased two years of military-service credit, which McClaran was eligible to obtain for retirement-benefit purposes. From August 2006 on, McClaran received pension payments from the fund.

{¶ 9} McClaran applied for retirement benefits after he had been locked out of his office, stating that he had no other source of income, and he needed to continue health-insurance coverage for his wife, who had been undergoing continuing medical care after an accident that had occurred several years earlier.

### Mandamus Action

{¶ 10} In December 2006, McClaran filed a complaint in the Court of Appeals for Richland County for a writ of mandamus to compel Ontario to reinstate him to his position as police chief and award him back pay. The city filed an answer and subsequently filed a motion for summary judgment.

{¶ 11} The court of appeals granted the city's motion and denied the writ.

### Mandamus Requirements

{¶ 12} In his appeal as of right, McClaran asserts that the court of appeals erred in denying the requested extraordinary relief in mandamus. To be entitled to the requested writ of mandamus, McClaran must establish (1) a clear legal right to be reinstated to his position as police chief and to be awarded back pay, (2) a clear legal duty on the part of the city to reinstate him and award him back pay, and (3) the lack of an adequate remedy in the ordinary course of law. See, e.g., *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 17.

Lack of an Adequate Remedy in the Ordinary Course of Law

{¶ 13} The court of appeals denied the writ based on its conclusion that McClaran has or had an adequate remedy in the ordinary course of law to challenge his removal from the position of police chief, stating:

{¶ 14} "R.C. 124.34 clearly provides an administrative remedy for civil service employees who have been removed. Relator's requested relief is reinstatement which is not an appropriate remedy by way of mandamus when the local Civil Service Commission can provide or could have provided the requested relief. Relator has or had an adequate remedy at law; therefore, the motion for summary judgment is granted." *State ex rel. McClaran v. Ontario,* Richland App. No. 06–CA–99, 2007-Ohio-5254, 2007 WL 2851073, ¶ 11.

{¶ 15} Mandamus will not issue if there is a plain and adequate remedy in the ordinary course of law. R.C. 2731.05; *State ex rel. Ross v. State,* 102 Ohio St.3d 73, 2004-Ohio-1827, 806 N.E.2d 553, ¶ 5. "An administrative appeal generally provides an adequate remedy in the ordinary course of law that precludes extraordinary relief in mandamus." *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati,* 118 Ohio St.3d 131, 2008-Ohio-1966, 886 N.E.2d 839, ¶ 23. "Mandamus may not be employed as a substitute for a civil-service appeal." *State ex rel. Turner v. Houk,* 112 Ohio St.3d 561, 2007-Ohio-814, 862 N.E.2d 104, ¶ 9.

{¶ 16} McClaran was in the classified civil service when employed by the city as its police chief. See R.C. 124.01(A) (" 'Civil service' includes all offices and positions of trust or employment in the service of the * * * cities * * * of the state"); R.C. 124.11(A) (R.C. Chapter 124 does not exempt "the chiefs of police departments * * * of cities * * * from the competitive classified service"). Under R.C. 124.34(C), a police chief in the classified civil service may appeal a removal order by filing an appeal with the municipal or township civil-service commission within ten days after a removal order has been filed by the appointing authority with the commission:

{¶ 17} "In the case of * * * removal * * * of a chief of police * * * of a city or civil service township, who is in the classified civil service, *the appointing authority shall furnish the chief * * * with a copy of the order of * * * removal, which order shall state the reasons for the action. The order shall be filed with the municipal or civil service township civil service commission.* Within ten days following the filing of the order, the chief * * * may file an appeal, in writing, with the commission. If an appeal is filed, the commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, the appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority. An appeal on questions of law and fact may be had from the decision of the commission to the court of common pleas in the county in which

the city or civil service township is situated. The appeal shall be taken within thirty days from the finding of the commission." (Emphasis added.)

{¶ 18} Section 11.02 of the Rules and Regulations of the Ontario Civil Service Commission comparably requires the appointing authority to provide the affected employee with a copy of the removal order, which must state reasons and must be filed with the commission. The employee may file an appeal with the commission within ten days after the order is served on the employee.

{¶ 19} In *State ex rel. Alford v. Willoughby Civ. Serv. Comm.* (1979), 58 Ohio St.2d 221, 229, 12 O.O.3d 229, 390 N.E.2d 782, we held that certain nonteaching employees in the classified civil service who had been removed by a city school district board of education could seek a writ of mandamus to compel their reinstatement when no removal order had been filed with the commission:

{¶ 20} "R.C. 124.34 grants a right of appeal to a discharged classified employee upon the performance of a condition precedent—the filing of the order of removal with the commission by the appointing authority. In this cause, if no order was filed with the commission, then the appellants had no right of appeal, and no adequate remedy in the ordinary course of the law. In such circumstances, mandamus will lie to compel reinstatement."

{¶ 21} The city claims, however, that *Alford* is inapplicable because its holding has been overruled. In *State ex rel. Shine v. Garofalo* (1982), 69 Ohio St.2d 253, 23 O.O.3d 251, 431 N.E.2d 680, syllabus, a case involving a mandamus action filed by a former county employee who sought reinstatement, we held:

{¶ 22} "An employee in the classified civil service who alleges she has been removed from her employment has a plain and adequate remedy in the ordinary course of the law by way of appeal to the State Personnel Board of Review under R.C. 124.34, even though her employer fails to file an order of removal with the board of review."

{¶ 23} In so holding, we emphasized in *Shine* that after our holding in *Alford,* the State Personnel Board of Review adopted administrative rules that expressly permitted the affected employee to appeal a removal order even if no order had been filed with the board of review:

{¶ 24} "Our decision in *Alford* was issued May 30, 1979. Thereafter, the board of review promulgated two administrative rules clarifying the review procedure under R.C. 124.34. Ohio Adm.Code 124–5–02, effective July 1, 1979, provides:

{¶ 25} " 'If a reduction, removal or suspension is alleged and no "Section 124.34" order has been filed with the state personnel board of review, the affected employee shall prove, by a preponderance, that the reduction, removal or suspension has occurred.'

{¶ 26} "Ohio Adm.Code 124–1–03, effective July 26, 1979, provides in relevant part:

{¶ 27} " '(D) If an appointing authority fails to file an order or provide an employee with written notice, the affected employee shall file an appeal within thirty calendar days of the time he has actual notice of the action.'

{¶ 28} "* * *

{¶ 29} "* * * We conclude that the administrative rules establishing a 30–day period within which civil service employees may appeal job actions by employers who fail to file removal orders fall within the authority granted the board of review. Therefore, appellant has a plain and adequate remedy in the ordinary course of the law by way of an appeal under R.C. 124.34." *Shine*, 69 Ohio St.3d at 255–256, 23 O.O.3d 251, 431 N.E.2d 680; see also Ohio Adm.Code 124–5–02 and 124–1–03(I).

{¶ 30} We subsequently held, in another case involving a county civil-service employee, that *Shine* "held only that the State Personnel Board of Review has jurisdiction to entertain an employee's appeal of an alleged removal despite the failure of the appointing authority to file a R.C. 124.34 order of removal." *State ex rel. Cartmell v. Dorrian* (1982), 70 Ohio St.2d 128, 130, 24 O.O.3d 236, 435 N.E.2d 1112. We held that the county employee in *Cartmell* had an adequate remedy at law by way of an appeal to the State Personnel Board of Review following the employee's removal from his position, despite the lack of an R.C. 124.34 removal order.

{¶ 31} By contrast, this case does not involve a potential appeal to the State Personnel Board of Review, which has jurisdiction to hear appeals by employees in the *classified state service*. R.C. 124.03(A)(1) (State Personnel Board of Review has duty to hear specified appeals of "employees in the classified state service"); R.C. 124.01(B) (" 'State service' includes all offices and positions in the service of the state and the counties and general health districts of the state. 'State service' does not include offices and positions in the service of the cities, city health districts, and city school districts of the state").

{¶ 32} Instead, this case involves a potential appeal to the Ontario Civil Service Commission, which is governed by R.C. 124.34 and that commission's rules and regulations. Neither R.C. 124.34 nor the commission's rules and regulations contain an analogue to the administrative regulations allowing an appeal in State Personnel Board of Review cases despite the lack of a R.C. 124.34 removal order. Because the presence of these regulations was dispositive in both *Shine* and *Cartmell*, their absence here precluded McClaran from appealing to the civil-service commission once he was removed without an order from his position as police chief. *Alford* thus controls this case, and McClaran has established that he

lacks an adequate remedy through a civil-service appeal because the condition precedent for such appeal—the filing of a removal order—was never performed.

{¶ 33} Our holdings in *Turner*, 112 Ohio St.3d 561, 2007-Ohio-814, 862 N.E.2d 104, and *State ex rel. Weiss v. Indus. Comm.* (1992), 65 Ohio St.3d 470, 605 N.E.2d 37, cited by the city in support of its position, are distinguishable. In those cases, the affected employees were in the classified state service. They could have appealed the adverse job actions to the State Personnel Board of Review. As noted previously, McClaran was not in the classified state service and had no appeal to the State Personnel Board of Review.

{¶ 34} Therefore, the court of appeals erred in denying the writ based on the presence of an adequate remedy by way of an appeal to the civil-service commission.

### Legal Right and Legal Duty

{¶ 35} The city also contends that the court of appeals' denial of the writ was appropriate because McClaran voluntarily retired from his position as a police chief and was never removed from that position. See *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 18 (court will not reverse a correct judgment based on the lower court's flawed rationale). The court of appeals found that the parties' disagreement about whether McClaran voluntarily retired or was removed was "equivalent to a removal for [the] purpose of R.C. 124.34." *McClaran*, 2007-Ohio-5254, 2007 WL 2851073, at ¶ 9.

{¶ 36} The only reasonable conclusion to be drawn from the evidence here is that McClaran did not voluntarily retire. " '[A]n election to retire should not be considered voluntary when the employee's only alternative is a layoff or other reduction in work.' " *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 23, quoting *Res. Mining Co. v. Anderson* (Minn.App.1985), 377 N.W.2d 494, 497.

{¶ 37} Similarly, McClaran applied for retirement benefits only after city officials indicated to him that he could no longer report to work and that he no longer had access to city buildings. McClaran accepted retirement benefits because the city left him with no reasonable alternative—he had no other source of income, and his family needed health-insurance coverage. Thus, his "retirement" was not voluntary.

{¶ 38} Moreover, the city had rejected McClaran's counteroffer and had failed to pass the requisite resolution by the date specified in the counteroffer, and McClaran had withdrawn his counteroffer—all before the city claimed that it had accepted McClaran's counteroffer to retire. There was no binding agreement for McClaran to retire when the city removed him as police chief. See, e.g., 1 Williston on Contracts (4th Ed.2007) 906, Section 5:3 ("When an offer has been

rejected, it ceases to exist, and a subsequent attempted acceptance is inoperative * * * "); *Davis v. Marion Cty. Engineer* (1991), 60 Ohio St.3d 53, 573 N.E.2d 51, paragraph one of the syllabus ("A public employee may rescind or withdraw a tender of resignation at any time prior to its effective date, so long as the public employer has not formally accepted such tender of resignation").

{¶ 39} Therefore, the city removed McClaran from his position as police chief, without any of the permissible reasons for removal set forth in R.C. 124.34. See *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 9, 17 O.O.3d 3, 406 N.E.2d 1355 ("Employees in the classified service can only be removed for good cause and only after the procedures enumerated in R.C. 124.34 and the rules and regulations thereunder are followed"). McClaran thus established a clear legal right to be reinstated to his position of police chief and a clear legal duty on the part of the city to reinstate him.

## Conclusion

{¶ 40} Based on the foregoing, the court of appeals erred in denying the writ. McClaran has established his entitlement to the requested writ of mandamus to compel Ontario to reinstate him to his former position of police chief. Therefore, we reverse the judgment of the court of appeals and remand the cause to that court to grant the writ of mandamus to compel the city to reinstate McClaran as police chief and to determine the amount of back pay to which he is entitled. With regard to his back-pay claim, McClaran must establish the amount due with certainty. The city is entitled to an offset for retirement benefits received by McClaran during the period that he was wrongfully excluded from employment. *Stacy*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 28, 32–42.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

___

Cloppert, Latanick, Sauter & Washburn, Robert W. Sauter, and Kristin Seifert Watson, for appellant.

Calfee, Halter & Griswold, L.L.P., Richard P. Goddard, and Flite Freimann, for appellee.