OPINION
{¶ 1} Appellant, Judy Baker ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas affirming the decision of the State Personnel Board of Review ("SPBR"), which dismissed appellant's appeal of her termination by appellee, Columbiana County Auditor ("appellee"). For the reasons that follow, we affirm.
 {¶ 2} A recitation of the pertinent facts and lengthy procedural history of this case follows. Appellant first worked in appellee's office in the year 1960. Sometime thereafter, she departed from service in the Auditor's office, but later returned. At the beginning of the year 1990, appellant had continuously worked in that office for 14 years, and held the title of "estate tax/estate inventory/licenses clerk." At that time, Ross Kent Bell ("Bell") held the office of Columbiana County Auditor. In February 1990, Bell announced that appellant would be given the new title of "office manager." According to Bell and appellant, appellant's duties did not change with the conferring of this new title. In the general election held in the fall of 1990, Bell was defeated by Patricia Hadley ("Hadley"). By letter dated December 17, 1990, appellant requested that she no longer retain the title of "office manager." Again, however, appellant's job duties did not change.
 {¶ 3} Hadley assumed the office of Columbiana County Auditor in March 1991. Later in that month, Hadley terminated appellant. Appellant appealed her termination to the SPBR. After a hearing held July 22, 1991, the administrative law judge ("ALJ") recommended dismissal of appellant's appeal for lack of jurisdiction. Specifically, the ALJ found that appellant was an unclassified employee not eligible to avail herself of the procedures afforded classified public employees before the SPBR. He based this finding upon a determination that appellant was a "fiduciary" pursuant to R.C. 124.11(A)(9) and a "deputy county auditor" pursuant to R.C. 124.11(A)(4). This finding meant that appellant was determined to be an "unclassified" employee, pursuant to R.C. 124.11. Having so found, the ALJ found it unnecessary to determine whether appellant was in an "administrative relationship" with appellee; those in an "administrative relationship" with an elected county official are also exempt from classified civil service, pursuant to R.C.124.11(A)(9). The SPBR adopted the ALJ's report and recommendation. On appeal, the court of common pleas affirmed the SPBR's decision.
 {¶ 4} Appellant appealed the trial court's decision, and we reversed and remanded for further proceedings. Baker v. Hadley
(June 6, 1995), Franklin App. No. 94APE10-1550 ("Baker I"). Specifically, we determined that the trial court abused its discretion in affirming the SPBR's determination that appellant was unclassified pursuant to the "deputy county auditor" and "fiduciary" exemptions found in R.C. 124.11. Following reversal and remand, the court of common pleas remanded the case to the SPBR for determination as to whether appellant was, at the time of her termination, in an administrative relationship with appellee, pursuant to R.C. 124.11(A)(9). Appellant appealed the trial court's remand order, which appeal was dismissed for lack of a final, appealable order. The Supreme Court of Ohio refused an appeal from this court's dismissal. Baker v. Hadley (1997),80 Ohio St.3d 1437.
 {¶ 5} Upon remand, the SPBR set the matter for an additional evidentiary hearing. Appellant filed a complaint with this court seeking a writ of mandamus to compel SPBR to reinstate appellant to her former position, and also a writ of prohibition prohibiting SPBR from conducting any proceedings other than to issue an order of reinstatement. Specifically, appellant argued that Baker I had determined appellant was in fact a classified employee, and, thus, was the law of the case, which would compel an order of reinstatement and preclude any further evidentiary proceedings or rulings by the SPBR. This court granted a motion to dismiss pursuant to Civ.R. 12(B)(6), finding that the SPBR did not patently and unambiguously lack jurisdiction to consider whether appellant was in an administrative relationship with appellee pursuant to R.C. 124.11. State ex rel. Baker v. StatePersonnel Bd. of Review (Oct. 22, 1998), Franklin App. No. 98AP-886 ("Baker II"). The Supreme Court of Ohio affirmed this court's dismissal of appellant's complaint. State ex rel. Bakerv. State Personnel Bd. of Rev. (1999), 85 Ohio St.3d 640. In its opinion, the Supreme Court of Ohio noted that the administrative exemption and the fiduciary exemption, both contained in R.C.124.11(A)(9), are separate and distinct exemptions.
 {¶ 6} Thereafter, on January 27, 2000, the SPBR held an evidentiary hearing on the issue of whether the administrative exemption applies to render appellant an unclassified employee under R.C. 124.11. Following the hearing, the ALJ found that appellant was an unclassified employee pursuant to the administrative exemption, and recommended dismissal of her appeal. The SPBR adopted the ALJ's report, whereupon appellant appealed to the Franklin County Court of Common Pleas. That court determined that its prior remand for determination of whether the administrative exemption applied was improper, finding that our opinion in Baker I had determined the issue of whether appellant was a classified employee. Finding Baker I — the law of the case — to have determined the ultimate issue, the trial court declared that the proceedings in the SPBR regarding whether the administrative exemption applied were moot. The trial court found that this court, in Baker I, had "determined, without specifically saying so, that Ms. Baker was classified." (Sept. 28, 2001 Decision and Entry, at 4.) Accordingly, the trial court concluded the SPBR's latest order was improper because it conflicted with Baker I. The court further determined that its prior remand order should only have remanded the case to the SPBR for a determination as to whether appellant had been properly terminated from the classified civil service. Accordingly, the trial court reversed the order of the SPBR and remanded the case for such a determination. Appellee herein appealed the trial court's decision. Appellant herein cross-appealed, arguing that the trial court should not have remanded the case for a hearing on the merits of appellant's termination, but, instead, should have reversed the SPBR and ordered immediate reinstatement.
 {¶ 7} This court reversed, holding that the trial court erred in determining that its prior remand order was improper, and in not reviewing the merits of the SPBR's order. We stated that, pursuant to the Supreme Court's 1999 decision, Baker I was notdeterminative of the issue whether or not appellant was a classified employee at the time of her termination. Thus, the trial court should have conducted the customary review of the SPBR's order. We therefore declined to address the remaining issues presented by the appeal, and remanded the case to the Franklin County Court of Common Pleas. Baker v. Columbiana Cty.Auditor, Franklin App. No. 01AP-1190, 2002-Ohio-4305 ("Baker III").
 {¶ 8} By a Decision and Entry journalized April 7, 2003, the court of common pleas affirmed the order of the SPBR finding appellant to have been in an administrative relationship with appellee, and, thus, not a member of the classified civil service. It is from this order that appellant has timely appealed. She asserts three assignments of error, as follows:
1. The Common Pleas Court erred in failing to find that the State Personnel Board of Review's Order is not supported by reliable, probative, and substantial evidence and is contrary to law.
2. The Common Pleas Court erred in finding Ms. Baker to be an unclassified employee and in finding that Ms. Baker was in an administrative relationship with the Auditor.
3. The Common Pleas Court erred in failing to reverse the State Personnel Board of Review's decision and order Ms. Baker reinstated.
 {¶ 9} R.C. 119.12 establishes the standard of review to be applied by the court of common pleas when reviewing an administrative appeal. The court may affirm the agency's order if the court finds, based upon consideration of the entire record and such additional evidence as may be admitted by the court in its discretion, that the order is supported by substantial, reliable, and probative evidence and is in accordance with law. In performing this review, the court of common pleas may consider the credibility of witnesses and the weight and probative character of the evidence. Russell v. Ohio Dept. of Admin.Servs. (Sept. 16, 1999), Franklin App. No. 99AP-22.
 {¶ 10} When considering an appeal from the court of common pleas, our standard of review is limited to a determination of whether the court of common pleas abused its discretion in finding that there was substantial, reliable, and probative evidence in the record to support the order of the administrative agency, and in finding that the order was in accordance with law.Rohde v. Farmer (1970), 23 Ohio St.2d 82; Hartzog v. OhioState Univ. (1985), 27 Ohio App.3d 214. The term "abuse of discretion" implies a decision that is both without reasonable basis and clearly wrong. Angelkovski v. Buckeye Potato ChipsCo. (1983), 11 Ohio App.3d 159. As to whether or not the SPBR's order is in accordance with law, our review is plenary. Donnerv. Ohio Bur. of Workers' Comp. (Dec. 7, 1999), Franklin App. No. 98AP-1414, citing Gen. Motors Corp. v. Joe O'Brien Chevrolet,Inc. (1997), 118 Ohio App.3d 470, discretionary appeals not allowed in (1997), 79 Ohio St.3d 1445.
 {¶ 11} A civil service employee is either "classified" or "unclassified." The significance of this distinction is that a classified employee is protected from termination without cause, pursuant to the procedural safeguards contained in R.C. 124.34. Unclassified employees are not entitled to such procedural protections. The SPBR does not have jurisdiction to hear appeals from unclassified employees. R.C. 124.03. An employee is classified unless her position is specifically included in the unclassified service. R.C. 124.11(B). R.C. 124.11 provides, in pertinent part:
The civil service of the state and the several counties, cities, civil service townships, city health districts, general health districts, and city school districts thereof shall be divided into the unclassified service and the classified service.
(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:
* * *
(9) The deputies and assistants of state agencies authorized to act for and on behalf of the agency, or holding a fiduciary or administrative relation to that agency and those persons employed by and directly responsible to elected county officials or a county administrator and holding a fiduciary or administrative relationship to such elected county officials or county administrator * * *.
Thus, employees having an administrative relationship to elected county officials are in the unclassified service. The sole issue in the within case is whether appellant was in an administrative relationship with appellee during the year preceding her termination. See Smith v. Sushka (1995),103 Ohio App.3d 465, 472.
 {¶ 12} Ohio Adm. Code 124-1-02(C) defines "administrative relationship" as follows:
"Administrative relationship" generally means a relationship where an employee has substantial authority to initiate discretionary action and/or in which the appointing authority must rely on the employee's personal judgment and leadership abilities. The average employee would not possess such qualities or be delegated such discretionary authority. Whether one position occupies an administrative relationship to another is a question of fact to be determined by the board.
 {¶ 13} The word "administrative" implies, "something more than the ordinary relationship of employer and employee." In reTermination of Employment of Pratt (1974), 40 Ohio St.2d 107,114. In Yarosh v. Becane (1980), 63 Ohio St.2d 5, the Supreme Court of Ohio held that a deputy sheriff is in an administrative relationship with a county sheriff, "when the duties the deputy is required to perform for the sheriff are such that the sheriff must rely on the deputy's personal judgment and leadership abilities." Id. at paragraph four of the syllabus. The Yarosh
court also held that the administrative relationship would involve the county employee being, "in charge of formulating official policy or in charge of carrying out that policy in the supervision of the daily activities of subordinates." Id. at 12. The court further stated that a county official can only entrust such activities, "to someone he feels has strong leadership and judgment abilities" beyond those possessed by the average employee. Id.
 {¶ 14} The Yarosh court made it clear, however, that the fact that a deputy sheriff may, at times, temporarily supervise other employees, or may pass on orders from superiors to subordinates, does not place that deputy in an administrative relationship with the sheriff. The court noted, "[a]ny deputy may be expected to relay orders or if he or she possesses significant knowledge of police procedure to direct an on-the-scene investigation. The basic knowledge required is testable; exceptional leadership and judgment ability is not required." Id. at 12-13.
 {¶ 15} Mere title does not conclusively determine whether an employee is a member of the unclassified service pursuant to R.C.124.11. Kohls v. Perry Cty. Bd. of Mental Retardation Dev.Disabilities (Sept. 29, 1994), Franklin App. No. 94APE01-122. The actual duties assigned to and performed by the employee will determine the employee's status. Id.; In re Termination ofPratt, supra; Yarosh, supra; State ex rel. Emmons v.Guckenberger (1936), 131 Ohio St. 466. Those duties must include the exercise of one's own judgment and leadership skills, not merely the relaying of orders and procedures. See Gallia CountySheriff v. Burnette (Feb. 16, 1993), Gallia App. No. 92-CA-13. Thus, that appellant once held and later requested that she be relieved of the title of "office manager" is irrelevant to the inquiry whether she was in an administrative relationship with appellee. Such determination must be based upon evidence as to the actual duties delegated to and performed by appellant. All
of her duties should be considered in arriving at such determination. Smith v. Sushka (1995), 103 Ohio App.3d 465,472.
 {¶ 16} We have thoroughly reviewed the transcripts of both evidentiary hearings held before the SPBR, and have culled the following testimony relevant to appellant's duties at the time she was terminated, and in the year preceding same. Auditor Bell testified that the organizational structure of his office in 1990 consisted of three bookkeeping clerks, four licensing/personal property clerks, five real estate/weights and measures clerks and two settlement clerks. All of these individuals reported directly to Bell. According to Bell, because appellant had at least 13 more years of experience than the next longest-serving employee in his office, "it was assumed" that appellant would be capable of answering any question that might arise within the office. Bell testified that, though members of his staff, including appellant, had the authority to answer questions and deal with members of the public, no one but Bell had decision-making authority except for a "daily or routine requirement of the office."
 {¶ 17} According to Bell, appellant had the authority to "sign" Bell's name to preprinted forms — such as license applications and tax releases — by signing "Kent Bell, by Judy Baker," but that all of his clerks had this authority. Bell characterized appellant's work as record keeping, ministerial work that was "routine" in nature. Bell stated that appellant did not have the authority to change any procedures. He testified that appellant had no authority to tell someone that they could not have a license for which they had applied; if there was a question as to whether a particular license could be issued, appellant was to direct the applicant to Bell or to a representative of the Ohio Department of Taxation. Bell stated that appellant did not "oversee" any of the other workers in the office, and had no hiring and firing authority. When processing estate tax releases, appellant did not exercise any judgment — she simply filled out forms and processed them as she had been instructed to do.
 {¶ 18} Bell testified that, though appellant was the only clerk who dealt with the inventorying of safe deposit boxes, the work was nevertheless routine and did not involve special trust or personal judgment. Bell stated appellant spent two to three hours per week accompanying estate fiduciaries and/or their attorneys, along with representatives from financial institutions, when safe deposit boxes were inventoried following the death of the decedent. She would fill out a form listing the contents of each box for the Auditor's records. Bell testified that there was no duty performed by appellant that any other person with the appropriate training could not have performed.
 {¶ 19} Appellant testified that part of her job was to answer questions — if she could — about office procedures posed to her by other clerks. She also showed new staff how to do things because she knew the procedures very well due to her long tenure at the office. She processed estate tax releases and license applications. She stated she typed the preprinted license application forms using information given to her by the applicant. She stated this would take approximately five minutes per application. Appellant testified she would put her initials on documents bearing the rubber stamp of Bell's signature; she stated she did this on a daily basis. Appellant testified that there is no basic difference between what she did in this regard and what a clerk does when someone applies to renew his or her driver's license. Appellant testified that she did not have the authority to deny a license; if there was a question whether a particular license could be issued, she would refer the application to the Ohio Department of Taxation. With respect to safe deposit boxes, appellant stated she would go to the bank with the estate representative and write down a list of the contents of the box; she testified that she did not assign values to any items in the safe deposit boxes. Appellant testified that she made decisions only as to routine matters, and that everyone else in the office could and did do the same things she did. She testified that part of her job was to train new employees. When asked whether she ever approved coworkers' vacation requests, appellant replied, "I don't recall ever approving, no." (Jan. 27, 2000 Tr. at 22.)
 {¶ 20} Appellee called witnesses Sipe and Darlene Zook ("Zook"). Zook testified that she was hired in 1990 into the dog licensing department; she later moved to the trailer tax department. She testified that, upon her arrival at the office, Bell told her to go to Baker whenever she had any questions. When asked what sort of questions Bell was referring to, she stated the questions would be about how to do the dog licensing job. Zook testified that appellant was "in charge of" the department, and Zook considered appellant to be her "supervisor." When asked what "in charge of" meant to Zook, she stated that appellant "being in charge of" the department meant that whenever Zook had a question or a problem she should go to appellant. On cross-examination, Zook admitted that Bell did not actually state that appellant was Zook's supervisor; it was only Zook's "understanding" that she was. She stated that when appellant was unavailable, Zook would direct any questions to another clerk named Bonnie Johnson.
 {¶ 21} Zook stated that appellant trained her, especially when she moved to the trailer department. She stated that, "the girl that would have taught me how to do everything was gone" so she would ask appellant how to do the job. When asked what she expected from appellant during the time appellant was training her, Zook stated that she expected to be shown, "basically how to do the trailer tax job." When asked what appellant's role was, Zook stated, "[s]he was the first one I went to if I had any questions or problems." When asked what kind of questions she was referring to, she replied, "questions about how to do the job and problems if anything arose while I was doing the job." On cross-examination, Zook admitted that appellant never told her that appellant wanted something done a certain way, and never told Zook she was doing something the wrong way.
 {¶ 22} Zook testified on direct examination that appellant had the authority to approve or disapprove vacation requests; on cross-examination she further explained that if staff members wanted vacation time, they were "supposed to go through" appellant. Zook testified that appellant did not hire her and never disciplined her.
 {¶ 23} Sipe testified she worked in the office of the Columbiana County Auditor from 1988 to 1992. In the years 1990 and 1991, she worked in the personal property department collecting taxes and tax forms, and processing same. She characterized appellant as her "supervisor" and explained that this was the case because, "she had been there the longest so she knew, you know, what to do." Sipe also testified on direct examination that appellant approved vacation requests. On cross-examination, she explained that she would ask appellant for approval of a vacation and then appellant "checked it out and then said yes." She testified that Bell indicated to her that appellant was her supervisor. When asked how he did this, Sipe testified that Bell stated "that if I had a question or problem, I went to Judy and she would help me with it." When asked to give an example of a question she had asked of appellant, Sipe cited a question about the proper township to which personal property taxes should be applied.
 {¶ 24} On cross-examination, Sipe stated that appellant did not hire her or discipline her. She stated that appellant did not direct her work unless she asked appellant a specific question, in which case appellant would answer her question as to how to do a particular thing, such as how to fill out a form. Sipe testified that she frequently posed questions about personal property tax to a representative of the Ohio Department of Taxation, and not to appellant. Sipe testified that she is sure that Bell said something to the effect that, if Sipe had questions, she should go to appellant because appellant had been with the office for a long time and would know the answer.
 {¶ 25} Appellant's first two assignments of error are interrelated and will be addressed together. Therein, appellant argues that the SPBR's finding that she was in an administrative relationship with appellee was not supported by reliable, probative and substantial evidence, and that it in fact demonstrates that appellant was not in such a relationship. Appellant characterizes her duties as routine and ministerial in nature. She argues that she was not the "supervisor" of any of her fellow employees, in the sense of possessing authority over them and the procedures that they followed.
 {¶ 26} It is important to remain mindful that the fact that Zook and Sipe viewed appellant as their "supervisor" does not demonstrate that she was their supervisor in a manner such that she was in an administrative relationship with appellee. Again, the applicable decisional law requires that the nature of an employee's duties — not her co-workers' appraisal of them — determines her status as either classified or unclassified.
 {¶ 27} The ALJ made note that Zook's and Sipe's testimony carried more weight than did the testimony of appellant's witnesses. This determination was within the ALJ's province and we defer to it. Zook's and Sipe's testimony regarding the nature of appellant's duties can be summarized as follows: (1) each was told to direct questions regarding office procedures first to appellant because appellant had the longest tenure in the office; (2) each would submit vacation requests to appellant and appellant would later inform the requesting party that the vacation request had been approved; (3) appellant did not hire or discipline Zook and Sipe; (4) appellant taught Zook everything about how to work in the trailer tax department; and (5) thereafter, appellant provided direction to Zook and Sipe when she was asked a specific question.
 {¶ 28} After taking this evidence, as well as the testimony of Bell and appellant, the ALJ made the following findings of fact: (1) appellant "oversaw the functions of and ran the trailer license section, the personal property tax section, and the dog license section, and also oversaw other activity conducted in the front office of the Columbiana County Auditor"; (2) appellant "performed various supervisory duties for the employees in the front office in the three sections therein, including: approving vacation requests from those employees; and determining and thereafter implementing procedures to effectuate the Auditor's policies concerning a myriad of financial and accounting functions for the Office of the Columbiana County Auditor"; and appellant "also apparently shared the statutory function of balancing the Treasurer's collection with the Chief Bookkeeper, Myra Allison." (June 9, 2000 Report and Recommendation, case No. 97-RMD-05-0288 at 7.)
 {¶ 29} The ALJ went on to summarize his findings as follows:
* * * then-Auditor Bell's own statements were that he relied on Appellant to oversee at a minimum the three sections out front in the Columbiana County Auditor's Office and that then-Auditor Bell relied on Appellant to run that part of the office.
* * *
Finally, based upon the Auditor's experience over many years of trusting Appellant with these high level of duties and relying on her to execute those duties independently, I find that then-Auditor Kent Bell relied on Appellant's personal judgment and leadership abilities and that those abilities were such that he would not have been able to expect an average employee with such knowledge to perform those tasks.
(Id. at 8.)
 {¶ 30} In the present appeal, appellant argues that Bell's testimony establishes that he retained all decision-making authority and personal judgment for himself, and did not delegate to appellant the authority to speak or act for him. Appellant argues her duties do not meet the definition of "administrative relationship" found in Ohio Adm. Code 124-1-02(C) because she did not have "substantial authority to initiate discretionary action," and Bell did not rely on her "personal judgment and leadership abilities." She points out that the only testimony regarding appellant being treated as a "leader" demonstrates that, due solely to her long tenure and years of doing the same routine tasks required of newer employees, she was offered as a helpful repository of answers to questions newer employees might have regarding the technical requirements of their jobs. Appellant argues this does not equate to her possessing qualities beyond those possessed by the average employee, and does not demonstrate that she was "in charge of formulating official policy or in charge of carrying out that policy in the supervision of the daily activities of subordinates." Yarosh,
supra, at 12.
 {¶ 31} Appellee argues that the evidence demonstrates that appellant was in fact in an administrative relationship with appellee. Appellee points to a newspaper article published in January 1990, which reported Bell's new designation of appellant as "office manager." The article reports that the new title represented "a new post Bell created to oversee the dog, trailer and vendor licenses and property taxes." The article quotes Bell as saying, "[w]ith having so many new staffers, I rely on her to run that part of the office." Appellee argues that this demonstrates that Bell relied upon appellant's experience, judgment and leadership skills, as those terms are used to define "administrative relationship." Appellee argues that, "if Appellant did not have the experience she had, she would not have been given the Office Manager position. Her long tenure at the Auditor's office provided her with the leadership skills needed to address problems that arose in the normal course of business for the Auditor's Office." (Brief of appellee, at 13-14.)
 {¶ 32} Bell's testimony confirms that the new title was given to appellant because of her experience. However, Bell also testified that he decided to give appellant this new title because she had not received a pay raise in some time, he wanted to raise her salary and he felt the new title would help legitimize the raise. Neither the fact that Bell gave the "office manager" title to appellant, nor Bell's testimony that he used the conferring of a new title as a pretext to justify giving appellant a raise, supports any inference with respect to whether appellant was in an administrative relationship with appellee.
 {¶ 33} The ALJ properly focused not on appellant's title or on her extensive experience, but on evidence bearing upon the nature of appellant's duties during the year preceding her termination. Both Bell and appellant testified that appellant's duties did not change when Bell conferred the "office manager" title upon her. However, Bell did acknowledge his public statement that appellant "ran" the dog license/trailer tax/vendor license/property tax departments.
 {¶ 34} We find troubling appellee's argument that appellant's experience alone placed her in an administrative relationship with Bell and his successor. Appellee seems to advance the notion that a long-time employee can somehow metamorphose from a classified to an unclassified employee strictly by virtue of the employee's long tenure, even when that person's duties remain unchanged. We reject this notion. An examination of the totality of the employee's duties must reveal that something more than length of service sets him or her apart from the average employee.
 {¶ 35} Appellee also argues that appellant's training of new employees, "required Appellant to use her independent judgment to interpret office policies and procedures." (Brief of appellee, at 16.) Appellee argues that appellant's training of new employees, "in essence, resulted in Appellant creating new policy for the Auditor's Office." (Id. at 17.) We do not believe that every employee in every county office across the state who, by virtue of his or her experience, is called upon to demonstrate office procedures for new employees, and later answer follow-up questions, becomes a trusted policy advisor and thereby sheds his or her classified status.
 {¶ 36} As noted by the Supreme Court of Ohio in Yarosh,
supra, passing on orders and knowledge of appropriate procedures, by virtue of one's familiarity with same, does not place one in an administrative relationship with the county official because, "exceptional leadership and judgment ability" is not required for this. Yarosh, supra, at 13. However, the fact that Bell relied on appellant to train newer employees with respect to office procedures, and provide ongoing counsel regarding same, militates in favor of the conclusion that Bell relied on appellant's "strong personal judgment and leadership abilities," Id. at paragraph four of the syllabus, and on her ability to carry out policy, "in the supervision of the daily activities of subordinates." Id. at 12. If the evidence relied on by the SPBR demonstrates that all of appellant's duties (including the training of new employees), taken together, amounted to supervision of "subordinates," Yarosh, supra, at 12, then appellant was properly determined to have been in an administrative relationship with appellee.
 {¶ 37} Appellee also argues that, because appellant was the only clerk who performed duties related to safe deposit boxes, appellant was in an administrative relationship with appellee. It must be emphasized that appellant spent two to three hours per week accompanying estate fiduciaries to financial institutions when estate safe deposit boxes were first inventoried. Appellant filled out a form listing each item contained in such safe deposit boxes. This did not require appellant to, "use her independent judgment," as argued by appellee. However, the fact that appellee was the only employee charged with this duty does bear upon the extent to which Bell relied on appellant's abilities beyond the degree to which he relied on those of other members of his staff.
 {¶ 38} In an administrative proceeding, the party asserting the affirmative bears the burden of proof. Czechowski v. Univ.of Toledo (Mar. 18, 1999), Franklin App. No. 98AP-366. Thus, appellant carried the burden of proving, by a preponderance of the evidence, that she was not in an administrative relationship with appellee. Ohio Adm. Code 124-1-01(C). The ALJ found appellant failed to meet this burden. A reviewing court of appeals must generally defer to the administrative agency's resolution of issues on which there is conflicting evidence. The Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108. On purely legal issues, we may conduct a de novo review. Joys v. Univ. ofToledo (Apr. 29, 1997), Franklin App. No. 96APE08-1040.
 {¶ 39} The legal issue before us is whether, in light of all of the facts adduced and as determined by the ALJ, appellant's job duties bring her within the administrative relationship exemption to the classified service contained in R.C.124.11(A)(9) and defined by Ohio Adm. Code 124-1-02(C) and by applicable decisional law.
 {¶ 40} Upon a review of the entire record, we cannot say that the court of common pleas abused its discretion in affirming the SPBR's conclusion that Bell, "[relied] on Appellant to run the front portion of his office," that Bell relied on appellant's "personal judgment and leadership abilities," and that appellant had, "substantial authority to carry out the Auditor's policies in the supervision of the daily activities of subordinates." (June 9, 2000 Report and Recommendation, Case No. 97-RMD-05-0288 at 10.)
 {¶ 41} Where all duties are clearly routine, and where knowledge of proper procedure for use in completing these tasks is sufficient to qualify an individual for such a task, an administrative relationship does not exist. However, as here, where the totality of an employee's duties demonstrates that she possesses leadership qualities and personal judgment not found in the average employee, and that these aspects are relied upon by an elected county official such that the employee is charged with carrying out policy in the supervision of the daily activities of subordinates, an administrative relationship exists, and the employee is exempt from the classified civil service.
 {¶ 42} We find that the court of common pleas did not abuse its discretion in affirming the order of the SPBR dismissing appellant's appeal for lack of jurisdiction. Accordingly, we overrule appellant's first and second assignments of error.
 {¶ 43} In her third assignment of error, appellant argues that the court of common pleas should have reversed the SPBR's order and ordered the SPBR to reinstate her. For support of this contention, appellant directs our attention to this court's determination in Baker I that no fiduciary relationship existed between her and appellee. Appellant argues that this determination — pursuant to the doctrine of the law of the case — conclusively established that Bell did not rely on her personal judgment and leadership abilities, and, thus, appellant was not in an administrative relationship with Bell or his successor.
 {¶ 44} However, the Supreme Court of Ohio has held that the fiduciary and administrative exemptions contained in R.C.124.11(A)(9) are not a single exemption such that resolution of the applicability of one necessarily determines the applicability of the other. State ex rel. Baker, at 642. Furthermore, an examination of the definitions of "administrative relationship" and "fiduciary relationship" found in Ohio Adm. Code 124-1-02(C) and (I), respectively, reveals that the definitions are sufficiently different such that a tribunal's findings regarding the applicability of either exemption do not preclude subsequent consideration of the applicability of the other.
 {¶ 45} Moreover, pursuant to the law-of-the-case doctrine, the decision of a reviewing court in a case remains the law of that case with respect to legal questions involved for all subsequent proceedings in the case, both at the trial and appellate levels. Pipe Fitters Union Local No. 392 v. KokosingConstr. Co., Inc. (1998), 81 Ohio St.3d 214, 218. As observed by the Supreme Court of Ohio in State ex rel. Baker v. StatePersonnel Bd. of Review (1999), 85 Ohio St.3d 640, this court's decision in Baker I resolved only the applicability of the fiduciary and deputy county auditor exemptions to the classified civil service. This was a legal issue, not a factual issue. Thus, as we stated in our decision in Baker II, the SPBR was not precluded from determining issues of fact with respect to whether appellant was in an administrative relationship with appellee. SPBR's legal conclusions regarding whether appellant was in such a relationship with appellee would be, and are, reviewable. Accordingly, appellant's third assignment of error is not well taken and is hereby overruled.
 {¶ 46} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Petree, JJ., concur.