[Cite as *Glasstetter v. Rehab. Servs. Comm.*, 2014-Ohio-3014.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Eydie Glasstetter, | : | |
| Appellant-Appellant, | : | |
| | | No. 13AP-932 |
| v. | : | (C.P.C. No. 12CV-6172) |
| Rehabilitation Services Commission, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on July 8, 2014

*James E. Melle*, for appellant.

*Michael DeWine*, Attorney General, and *Joseph Rosenthal*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Appellant-appellant, Eydie Glasstetter, appeals from the judgment of the Franklin County Court of Common Pleas affirming an order of the State Personnel Board of Review ("SPBR") in which the SPBR found it lacked jurisdiction to consider Glasstetter's administrative appeals of actions taken by her former employer, the Rehabilitation Services Commission ("RSC").[1]  For the reasons that follow, we affirm.

## I. Factual and Procedural Background

### A. Glasstetter's State Employment[2]

---

[1] In 2013, RSC became the Opportunities for Ohioans with disabilities agency.  *See* R.C. 3304.15.

[2] The facts in Sections I.A. and B. are taken from the Supreme Court of Ohio's decision in *State ex rel. Glasstetter v. Rehab. Servs. Comm.*, 122 Ohio St.3d 432, 2009-Ohio-3507.

{¶ 2}   Glasstetter was employed beginning in 1992 by the state of Ohio in the unclassified position of Human Resources Administrator 2 at the Department of Commerce. She transferred to the Bureau of Employment Services, where she was promoted to Human Resources Administrator 3 ("HRA3"), another unclassified position. In 1998, RSC posted an opening for a job in the same HRA3 position.  The job posting listed the position with RSC as a classified position. Glasstetter transferred into that position in October 1998.

{¶ 3}   In April 2006, John M. Connelly, the executive director at RSC, told Glasstetter he wanted to redesignate her position as unclassified. Connelly was the appointing authority for RSC.  Connelly concluded based on the duties performed by Glasstetter in her HRA3 job, she was in the unclassified service, but had erroneously been designated as being in the classified service. Glasstetter claimed Connelly offered her the following choice—either (1) she could remain classified and RSC would hire another employee with the same classification and duties who would be above her, or (2) she could agree to the redesignation of the position as unclassified. Although she objected, Glasstetter ultimately consented to the redesignation.

### B. Removal from State Employment and Appeals to SPBR

{¶ 4}   A few days after Glasstetter was redesignated as an unclassified employee, Connelly requested that she be investigated.  Glasstetter was subsequently notified she was the target of a disciplinary investigation.  Through her attorney, Glasstetter then advised Connelly that she was exercising fallback rights to resume her classified position. Connelly rejected Glasstetter's claim that she was entitled to fallback rights. Later, Connelly notified Glasstetter that based on the investigative report, he was considering terminating her from RSC. Effective August 21, 2006, he did terminate her, and Glasstetter appealed the removal order to the SPBR.

{¶ 5}   RSC issued another order in December 2006 specifying that based on the investigative report, Glasstetter had been removed from her position for cause pursuant to R.C. 124.34.  Glasstetter also appealed that order to the SPBR.  In both appeals, SPBR determined it lacked jurisdiction to review Glasstetter's claim that she had been denied her fallback rights.  SPBR stayed the appeals to allow the parties the opportunity to resolve the issue through a mandamus action.

### C. Federal Case

{¶ 6}   In February 2007, Glasstetter filed a complaint in the United States District Court for the Southern District of Ohio, Eastern Division, against RSC, Connelly, and another individual.  *Glasstetter v. Rehab. Servs. Comm.*, S.D.Ohio No. 2:07-cv-125, 2008 WL 886137 (Mar. 28, 2008) ("*Glasstetter I*").  In March 2008, the federal district court granted the defendants partial judgment on the pleadings.  *Id.*  In 2010, the court granted them summary judgment on the remainder of Glasstetter's claims.  *Glasstetter v. Rehab. Servs. Comm.*, S.D.Ohio No. 2:07-cv-125, 2010 WL 2465356 (June 14, 2010) ("*Glasstetter II*").

### D. Mandamus Case

{¶ 7}   In January 2008, Glasstetter filed a complaint in this court for a writ of mandamus to compel RSC and Connelly to honor her fallback rights and reinstate her to the position of HRA3 in the classified service.  *State ex rel. Glasstetter v. Connelly*, 179 Ohio App.3d 196, 2008-Ohio-5755, ¶ 1, 25 (10th Dist.) ("*Glasstetter III*").  We referred the matter to a magistrate, and in November 2008, we adopted the magistrate's decision and granted RSC and Connelly summary judgment. *Id.* at ¶ 2, 15.  The Supreme Court of Ohio affirmed. *State ex rel. Glasstetter v. Rehab. Servs. Comm.*, 122 Ohio St.3d 432, 2009-Ohio-3507, ¶ 1 ("*Glasstetter IV*").

### E. SPBR Appeals Post-Mandamus Action

{¶ 8}   After the Supreme Court issued *Glasstetter IV*, the administrative law judges ("ALJs") assigned to the SPBR appeals issued a procedural order.  The ALJs found it necessary to conduct a hearing to resolve whether Glasstetter was in the classified service or not at the time of her removal in order to decide whether the SPBR had jurisdiction over her appeals.   The ALJs stated an employee's job duties were the determinative factor in this analysis and limited the admission of evidence at the hearing to evidence related to Glasstetter's duties in the two years prior to her removal.  Glasstetter contested this ruling on various grounds and argued she was in the classified service for reasons unrelated to her duties.  After a review of Glasstetter's arguments, the ALJs found no compelling reason to set aside the procedural order.

{¶ 9}  Glasstetter's appeals to the SPBR were consolidated, and one ALJ conducted the duties hearing, after which Glasstetter proffered information for the

record.  The ALJ issued a report and recommendation finding Glasstetter held a position in the unclassified service under R.C. 124.11(A)(9) and recommending dismissal of her appeals for lack of jurisdiction.  Glasstetter filed objections to the ALJ's report and recommendation, arguing the ALJ's R.C. 124.11(A)(9) finding was flawed.  Additionally, she objected to the limitations on the scope of the hearing and again argued she was in the classified service for reasons unrelated to her job duties.  After a thorough examination of the entire record, the SPBR adopted the ALJ's recommendation and dismissed Glasstetter's appeals for lack of jurisdiction.

{¶ 10} Glasstetter filed an appeal in the Franklin County Court of Common Pleas under R.C. 119.12.  The common pleas court affirmed the SPBR's order.

## II.  Assignments of Error

{¶ 11} Glasstetter appeals and presents this court with four assignments of error for our review:

> 1. The trial court abused its discretion in concluding that the order of the State Personnel Board of Review was supported by reliable, probative and substantial evidence and was in accordance with law.
>
> 2. The trial court abused its discretion in concluding that Appellant was hired into a position that was wrongfully listed as classified or misidentified as classified.
>
> 3. The trial court erred in refusing to find that, pursuant to R.C. 124.271, Appellant was a permanent employee in the classified service.
>
> 4. The trial court erred in finding that the Order of the State Personnel Board of Review is in accordance with law because:
>
> A. The SPBR Scope of Hearing Order unlawfully restricted the scope of the hearing to an examination of Appellant's duties and responsibilities while excluding evidence and legal argument that Appellant remained a classified employee and that she was improperly removed from the classified service.
>
> B. The SPBR failed to apply issue preclusion and/or law of the case doctrine to govern the scope of the Appellant's SPBR hearing.

C. Once an employee attains permanent status pursuant to R.C. 124.271, she cannot be removed without following the procedures for such removals under R.C. 124.34.

D. O.A.C. 124-1-02(C) conflicts with R.C. 124.11(A)(9) and with O.A.C. 123:1-47-01(A)(8) and when all are applied to an employee of the Rehabilitation Services Commission the result is an administrative decision which is illogical, inconsistent, based upon improper inferences and unlawful.

E. O.A.C. 124-1-04(A) and O.A.C. 124-1-04(B) bar any change in Appellant's classified status and SPBR erred in failing to apply those rules in this case and the Common Pleas Court erred in not addressing the issue.

F. Appellant was denied due process of law by the SPBR Scope of Hearing Order.

{¶ 12} Glasstetter uses headings in the argument section of her appellate brief, but the headings do not mirror the assigned errors, and many of her arguments seem applicable to more than one assigned error. Under App.R. 12(A)(2), we may choose to disregard any assignment of error an appellant fails to separately argue. *See State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 15. However, in the interest of justice, we have thoroughly reviewed Glasstetter's arguments and attempted to organize them in relation to the assigned errors.

## III. DISCUSSION

### A. Standard of Review

{¶ 13} " 'In an administrative appeal pursuant to R.C. 119.12, the [common pleas] court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence, and is in accordance with the law.' " *Levine v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-962, 2011-Ohio-3653, ¶ 12, quoting *Schechter v. Ohio State Med. Bd.*, 10th Dist. No. 04AP-1115, 2005-Ohio-4062, ¶ 55, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). According to the Supreme Court:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.

> (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes deleted.)  *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 14} The common pleas court's " 'review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' "  *Akron v. Ohio Dept. of Ins.*, 10th Dist. No. 13AP-473, 2014-Ohio-96, ¶ 19, quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  The court "must give due deference to the administrative determination of conflicting testimony, including the resolution of credibility conflicts."  *ATS Inst. of Technology v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-385, 2012-Ohio-6030, ¶ 29, citing *Crumpler v. State Bd. of Edn.*, 71 Ohio App.3d 526, 528 (10th Dist.1991).  The court must defer to the agency's findings of fact unless they are " 'internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable.' "  *Kimbro v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 12AP-1053, 2013-Ohio-2519, ¶ 7, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).  However, the common pleas court reviews legal questions de novo.  *Akron* at ¶ 19, citing *Ohio Historical Soc.* at 471.

{¶ 15} Our review is more limited than that of the common pleas court. *Smith v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-234, 2012-Ohio-4423, ¶ 13.  "In reviewing the court of common pleas' determination that the board's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion."  *Id.*, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992).  "An abuse of discretion occurs when a decision is unconscionable, unreasonable, or arbitrary."  *Weiss v. State Med. Bd. of Ohio*, 1oth Dist. No. 13AP-281, 2013-Ohio-4215, ¶ 15, citing *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 25.  On the question of whether the SPBR's order was in accordance with the law, our review is plenary.  *Id.*,

citing *Univ. Hosp., Univ. of Cincinnati College of Med. v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

### B. The Civil Service System Generally

{¶ 16} Ohio Constitution, Article XV, Section 10 states:

> Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.

{¶ 17} The legislature has enforced this constitutional provision by enacting R.C. Chapter 124. *Yarosh v. Becane*, 63 Ohio St.2d 5, 9 (1980). "R.C. 124.11 divides the civil service into the classified and unclassified service." *Id.* In relevant part, R.C. 124.11 provides:

> The civil service of the state * * * shall be divided into the unclassified service and the classified service.
>
> (A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:
>
> * * *
>
> (9) The deputies and assistants of state agencies authorized to act for and on behalf of the agency, or holding a fiduciary or administrative relation to that agency * * *.
>
> * * *
>
> (B) The classified service shall comprise all persons in the employ of the state * * *, not specifically included in the unclassified service.

{¶ 18} As the Supreme Court has explained:

> Positions in the classified service are those for which merit and fitness can be determined by examination. Employees in the classified service can only be removed for good cause and only after the procedures enumerated in R.C. 124.34 and the rules and regulations thereunder are followed. Positions in the unclassified service require qualities that the General

> Assembly has deemed are not determinable by examination. Employees in the unclassified service do not receive the protections afforded employees in the classified service.

*Yarosh* at 9.

{¶ 19} Under R.C. 124.03(A):

> The state personnel board of review shall exercise the following powers and perform the following duties:
>
> (1) Hear appeals, as provided by law, of employees *in the classified state service* from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification, or refusal of the director, or anybody authorized to perform the director's functions, to reassign an employee to another classification or to reclassify the employee's position with or without a job audit under division (D) of section 124.14 of the Revised Code.

(Emphasis added).  Thus, under this provision, the SPBR may hear appeals of employees in the classified state service under certain circumstances.  The SPBR lacks jurisdiction to hear appeals from unclassified employees. *Baker v. Columbiana Cty. Aud.*, 10th Dist. No. 03AP-552, 2004-Ohio-839, ¶ 11, citing R.C. 124.03.

### C. The SPBR's Order was in Accordance with Law

{¶ 20} Under her first assignment of error, Glasstetter generally contends, in part, that the common pleas court erred when it found the SPBR's order in accordance with law.  Under her fourth assignment of error, Glasstetter specifies the court erred when it found the SPBR's order in accordance with law because: (1) the scope of the hearing before the ALJ was too narrow, (2) she was in the classified service as a matter of law by virtue of former versions of R.C. 124.271 and Ohio Adm.Code 124-1-04, and (3) the application of Ohio Adm.Code 124-1-02(C) in this matter renders the SPBR's order unlawful. Under her third assignment of error, Glasstetter argues the court erred in refusing to find she was a permanent employee in the classified service under former R.C. 124.271.  We will address these assigned errors together because they raise similar issues, and Glasstetter commingled her arguments with regard to them.

### 1. Scope of the Hearing Before the ALJ

{¶ 21} RSC maintains Glasstetter was an employee in the unclassified service pursuant to R.C. 124.11(A)(9). The current version of Ohio Adm.Code 124-7-04, which was in effect at the time of the duties hearing, provides:

> When an employee has been adversely affected as an unclassified employee, the burden of proving the unclassified status of the employee is on the appointing authority. The board will take evidence of the employee's duties over a reasonable period of time, which is generally defined as at least two calendar years immediately prior to the adverse action, provided that the employee was in an active work status during that time period.

{¶ 22} This focus on duties is consistent with the Supreme Court's "longstanding precedent that the job title or position classification used by the appointing authority is not dispositive on the issue whether a public employee is in the classified or unclassified service and that the true test requires an examination of the duties actually delegated to and performed by the employee." *State ex rel. Barley v. Ohio Dept. of Job & Family Servs.*, 132 Ohio St.3d 505, 2012-Ohio-3329, ¶ 22, citing *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 113-14 (1974); *State ex rel. Emmons v. Guckenberger*, 131 Ohio St. 466, 469 (1936) ("However, it must be clear that a mere title is not at all conclusive. The true test is the duty actually delegated to and performed by an employee."); and *Yarosh* at paragraph two of the syllabus ("The State Personnel Board of Review has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities.").

{¶ 23} Nonetheless, Glasstetter argues the scope of the hearing in her case was unlawfully restricted to an examination of her job duties. She contends the SPBR violated the law of the case doctrine, the doctrine of issue preclusion, and her due process rights by barring her from presenting other evidence and arguments at the hearing regarding her status as an employee in the classified service and improper removal from that service.

### a. *Background Information*

{¶ 24} Before we address the merits of Glasstetter's contentions, it is necessary to examine the mandamus action in more depth. Again, Glasstetter previously sought a writ

of mandamus to compel RSC and Connelly to honor her fallback rights under R.C. 124.11(D) and reinstate her to the position of HRA3 in the classified service. *Glasstetter III* at ¶ 1, 25. The applicable version of R.C. 124.11(D) provided:

> "An appointing authority whose employees are paid directly by warrant of the auditor of the state may appoint a person who holds a certified position in the classified service within the appointing authority's agency to a position in the unclassified service within that agency. A person appointed pursuant to this division to a position in the unclassified service shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service. Reinstatement to a position in the classified service shall be to a position substantially equal to that position in the classified service held previously, as certified by the director of administrative services."

*Glasstetter IV* at ¶ 18, quoting 2000 Sub.S.B. No. 173, 148 Ohio Laws, Part IV, 9392-9393.

{¶ 25} This court found Glasstetter had no fallback rights under R.C. 124.11(D), and the Supreme Court agreed. *Id.* at ¶ 13, 25. The Supreme Court explained that "[i]n common usage, 'appoint' means 'to assign, designate, or set apart by authority,' 'position' is defined as 'the group of tasks and responsibilities making up the duties of an employee,' and 'reinstatement' means 'the action of reinstating (as in a post or position formerly held but relinquished).' " *Id.* at ¶ 19, quoting *Webster's Third New International Dictionary* 105, 1769, and 1915 (2002). Based on these definitions, the Supreme Court found Glasstetter "was never appointed to a position in the unclassified service." *Id.* at ¶ 20. "That is, she was never assigned to a separate position with different job duties. Instead, throughout her employment with [RSC], Glasstetter remained in the same position— [HRA3]—with the same job duties. Moreover, she was never separated from that position. * * * [T]here was thus 'no position for her to "fall back" to, other than the one she already occupied.' " *Id.*, quoting *Glasstetter I.* Because Glasstetter had no fallback rights under R.C. 124.11(D), she was not entitled to a writ ordering her reinstatement to the classified position of HRA3. *Id.* at ¶ 25.

{¶ 26} The Supreme Court recognized Glasstetter raised various other claims in the mandamus action, "including that she could not have been redesignated as an unclassified

employee absent her voluntary consent and that [RSC] and [Connelly] did not properly remove her from her employment with [RSC]." *Id.* at ¶ 26. The court found she was not entitled to a writ of mandamus on those claims because she had "an adequate remedy by her pending appeals to the SPBR and further appeal to the court of common pleas from any adverse SPBR decisions to raise her claims that she remained a classified employee and that she was improperly removed from the classified service." *Id.* at ¶ 28, citing *State ex rel. Baker v. State Personnel Bd. of Review*, 85 Ohio St.3d 640, 644 (1999), and *State ex rel. Weiss v. Indus. Comm.*, 65 Ohio St.3d 470, 474 (1992).

### b. *Law of the Case and Issue Preclusion*

{¶ 27} The law of the case doctrine provides "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984), citing *Gohman v. St. Bernard*, 111 Ohio St. 726, 730 (1924), *rev'd on other grounds*, *New York Life Ins. Co. v. Hosbrook*, 130 Ohio St. 101 (1935). The doctrine is "a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Id.*, citing *Gohman* at 730-31. "However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.*, citing *State ex rel. Potain, v. Mathews*, 59 Ohio St.2d 29, 32 (1979). In pursuit of these goals, the law of the case doctrine "functions to compel trial courts to follow the mandates of reviewing courts." *Id.* Thus, "[a]bsent extraordinary circumstances, * * * an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id.* at syllabus, following *Potain* at 32. Whether the law of the case doctrine applies in a particular situation constitutes a question of law. *DeAscentisi v. Margello*, 10th Dist. No. 08AP-522, 2008-Ohio-6821, ¶ 12.

{¶ 28} "The doctrine of res judicata has two aspects: claim preclusion and issue preclusion." *Arth Brass & Aluminum Castings, Inc. v. Ryan*, 10th Dist. No. 07AP-811, 2008-Ohio-1109, ¶ 8, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 380 (1995). "Issue preclusion, also known as collateral estoppel, provides that 'a fact or a point that was actually and directly at issue in a previous action, and was passed upon and

determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.' " *Id.*, quoting *Fort Frye Teachers Assn. v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). "Whether the doctrine of res judicata applies in a case is a question of law." *Id.* at ¶ 7.

{¶ 29} Glasstetter interprets the statement in *Glasstetter IV* that she had "an adequate remedy by her pending appeals to the SPBR * * * to raise her claims that she remained a classified employee and that she was improperly removed from the classified service" as a ruling that in her SPBR appeals, she is entitled to a hearing on any arguments she wished to make regarding her status and removal. *Glasstetter IV* at ¶ 28. She argues issue preclusion and the law of the case doctrine obligate the SPBR to provide her with such a hearing. However, the scope of Glasstetter's hearing before the SPBR was not at issue in *Glasstetter IV*. In *Glasstetter IV*, the Supreme Court simply recognized the SPBR was the appropriate tribunal to determine Glasstetter's status at the time of her removal and, if she was classified, the propriety of her removal. If Glasstetter disagreed with the SPBR's rulings, as the Supreme Court pointed out, she could file an appeal in the common pleas court, which she did.

{¶ 30} In any event, Glasstetter was able to preserve her non-duty related arguments via a pre-hearing motion, a post-hearing proffer, and her objections to the ALJ's report. The SPBR thoroughly reviewed the record before adopting the ALJ's recommendation. Thus, the SPBR did consider and reject Glasstetter's non-duty related arguments about her status and removal even though the SPBR did not make specific findings with regard to them. As we explain below, the specific non-duty related arguments identified in her appeal to this court lack merit. These arguments did not warrant a hearing.

### c. *Due Process*

{¶ 31} Glasstetter also makes a due process challenge to the scope of the hearing. "Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution require that administrative proceedings comport with due process." *Richmond v. Ohio Bd. of Nursing*, 10th Dist. No. 12AP-328, 2013-Ohio-110, ¶ 10, citing *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Doyle v. Ohio Bur. of Motor*

*Vehicles*, 51 Ohio St.3d 46 (1990).  "Pursuant to due process, governmental agencies must provide constitutionally adequate procedures before depriving individuals of their protected liberty or property interests."  *Natoli v. Ohio State Dental Bd.*, 177 Ohio App.3d 645, 2008-Ohio-4068, ¶ 18 (10th Dist.), citing *Mathews* at 332, and *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541 (1985).

{¶ 32} A " 'fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' "  *Natoli* at ¶ 18, quoting *Mathews* at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).  "At its core, due process insists upon fundamental fairness, and the requirement to conduct a hearing implies that a fair hearing must occur." *Id.*, citing *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 24 (1981), and *Clayman v. State Med. Bd.*, 133 Ohio App.3d 122, 127 (10th Dist.1999).  But, above all, " ' "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." ' " *Id.*, quoting *Mathews* at 334, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  The question of whether the due process requirements have been satisfied presents a legal question.  *See Slorp v. Dept. of Adm. Servs.*, 10th Dist. No. 97APE08-1136 (Apr. 30, 1998).

{¶ 33} Glasstetter suggests any limitations on the scope of the hearing before the ALJ violated her due process rights. However, the duties hearing was consistent with longstanding precedent that the "true test" of whether a public employee is in the classified or unclassified service "requires an examination of the duties actually delegated to and performed by the employee."  *Barley* at ¶ 22.  The scope of the hearing was appropriate to the issue at hand, i.e., whether Glasstetter was in fact classified at the time of her removal and able to invoke the jurisdiction of the SPBR.  Again, as we explain below, the specific non-duty related arguments Glasstetter identified in her appeal to this court are meritless and did not warrant a hearing.

{¶ 34} Additionally, Glasstetter claims she was "unlawfully prevented" from "making a record on the constitutional issues raised by her prehearing motion." (Appellant's Brief, 20.)  She complains that without this record, she cannot argue the merits of her "constitutional issues" but, instead, can only argue the SPBR "erred in failing to allow her to make a record and hear her claims." (Appellant's Brief, 20.) Though unclear, it appears Glasstetter is arguing that she wanted to make constitutional

arguments about her status as a classified employee and removal at a hearing, but could not.  Instead of elaborating on what her "constitutional issues" are, Glasstetter leaves it to this court to glean them from the record.  It is not this court's duty to construct appellant's arguments for her. *Hubbard* at ¶ 34, quoting *Camp v. Star Leasing Co.,* 10th Dist. No. 11AP-977, 2012-Ohio-3650, ¶ 67.

### 2. Glasstetter's Non-Duty Based Arguments Regarding her Employment Status

#### a. *Issue Preclusion*

{¶ 35} Glasstetter directs our attention to the Supreme Court's statement in the mandamus action that she was "never appointed to a position in the unclassified service." *Glasstetter IV* at ¶ 20.  She claims the court implicitly found she was always in the classified service, and issue preclusion prevents RSC from challenging that finding. However, Glasstetter takes the court's statement out of context. The court did not determine whether her HRA3 position was in fact classified or unclassified.  Rather, the court determined R.C. 124.11(D) did not apply to her.  The court reasoned the change in Glasstetter's designation from classified to unclassified could not be an "appointment" within the meaning of that statute because her duties never changed at RSC. As the federal district court aptly observed, because Glasstetter's duties did not change, she was "either legally in the classified service both before and after her status re-designation, or legally in the unclassified service both before and after the status re-designation." *Glasstetter I.*  The Supreme Court had no occasion to decide which of these alternatives was correct.

#### b. *R.C. 124.271*

{¶ 36} Glasstetter contends she became an employee in the classified service by virtue of the version of R.C. 124.271 in effect throughout her employment with RSC, which provided:

> Any employee in the classified service of the state * * * who is appointed provisionally to fill a vacancy and who remains in provisional status in the same classification or classification series for a period of two years of continuous service, during which period no competitive examination is held, becomes a

> permanent appointee in the classified service at the conclusion of such two-year period.

1995 Sub.S.B. No. 99.[3]

{¶ 37} Glasstetter suggests she became an "employee in the classified service of the state" for purposes of R.C. 124.271 when she transferred to RSC. She points to the fact that the HRA3 position was posted as classified. She argues that when she accepted the position, Department of Administrative Services' ("DAS") records identified her as a provisional employee, and provisional employees are in the classified service. Therefore, after two years of continuous service without an examination being held, she became a permanent appointee in the classified service under R.C. 124.271. She contends DAS records confirm the changes to her status in 1998 and 2000, and she highlights the fact that no one challenged her designation until 2006.

{¶ 38} Under Glasstetter's reasoning, if DAS records mistakenly identify an unclassified employee as a provisional employee and no one catches the mistake for two years, the employee becomes a permanent classified employee. The employee can only be removed under R.C. 124.34. Glasstetter contends *Richley v. Youngstown Civil Serv. Comm.*, 9 Ohio St.3d 15 (1984), *Moore v. Agin*, 12 Ohio St.3d 173 (1984), and *Yarosh* support this interpretation.

{¶ 39} However, " '[i]t is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law.' " *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 24, quoting *State v. Moaning*, 76 Ohio St.3d 126, 128 (1996). We will not assume the legislature explicitly defined unclassified and classified service positions in R.C. 124.11 only to implicitly create a conflicting definition in R.C. 124.271 that would enable unclassified employees to obtain the benefits of the classified service for no reason other than mistake. Such an interpretation is illogical and not compelled by the Supreme Court's decisions in *Richley, Moore,* or *Yarosh*.

---

[3] The current version of R.C. 124.271 provides: "Any employee in the classified service of the state * * * who is appointed to a position under section 124.30 of the Revised Code, and either demonstrates merit and fitness for the position by successfully completing the probationary period for the position or remains in the position for a period of six months of continuous service, whichever period is longer, shall become a permanent appointee in the classified service at the conclusion of that period."

{¶ 40} In *Richley*, the Supreme Court addressed whether R.C. 124.271 violated the Ohio Constitution's mandate that merit and fitness for civil service positions be ascertained, so far as practicable, by competitive examinations. The court found "[c]ontinuous performance in a position for two years may constitute an acceptable substitute for competitive testing to determine the constitutional requirement of 'merit and fitness.' " *Richley* at paragraph one of the syllabus. Therefore, "R.C. 124.271, which grants permanent and classified status by virtue of two years' continuous service, does not violate Section 10, Article XV of the Ohio Constitution." *Id.* at paragraph two of the syllabus. The court did not address whether a person could qualify as an employee in the classified service for purposes of R.C. 124.271 regardless of her status under R.C. 124.11. Thus, *Richley* does not support Glasstetter's argument.

{¶ 41} *Moore* stemmed from events that occurred because of a law enforcement leadership crisis in the city of Zanesville. To install new leadership quickly, the city petitioned its civil service commission to suspend the competitive examination requirements of R.C. Chapter 124 for the selection of a permanent police chief. *Moore* at 173. The commission granted the suspension and designated Earl Moore, an applicant from outside the police department, for appointment as chief in 1975, and he served in that capacity until his discharge in 1982. *Id.* The legality of his appointment was not challenged before then. *Id.* Moore sought a declaratory judgment that his appointment was legal and he was protected by the classified provisions of the Civil Service Act. *Id.* at 173-74. The Supreme Court found the appointment lawful, and, by virtue of his seven years of service, Moore became a member of the classified civil service under R.C. 124.271 and could appeal his removal. *Id.* at 175, fn. 1. However, in *Moore*, the parties at least implicitly agreed the police chief position was classified; they just disagreed about whether Moore was lawfully appointed to that position. Thus, the court had no occasion to address the relationship between R.C. 124.271 and 124.11.

{¶ 42} In *Yarosh*, a sheriff terminated several deputy sheriffs hired by his predecessor. The sheriff viewed the deputies as unclassified. *Yarosh* at 9. Evidently, the sheriff's predecessor shared that belief because he did not appoint the deputies based on examination results. *Id.* When the deputies contested their termination, the sheriff argued the SPBR lacked jurisdiction to hear the appeals because the deputies were

deemed unclassified by their appointing authorities. *Id.* The Supreme Court disagreed, finding an appointing authority could not deny an employee the right of review by the SPBR merely by declaring them to be unclassified. *Id.* at 10. The Supreme Court held SPBR "has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities." *Id.* at paragraph two of the syllabus. The court found the deputies were in the classified service as defined in R.C. 124.11(B). *Id.* at 13. Then, the court considered the import of the fact that the deputies were not appointed based on competitive examination results and held:

> A deputy who is not appointed to a position in the classified service due to the neglect of a sheriff to initiate the proper appointment procedure pursuant to R.C. 124.27 is, at the very least, a provisional employee in the classified service at the time of his appointment, and after two years of such service attains permanent status pursuant to R.C. 124.271. Once a deputy attains permanent status, a sheriff cannot remove him without following the procedures for such removals under R.C. 124.34.

*Id.* at paragraph five of the syllabus.

{¶ 43} Glasstetter contends paragraph two of the syllabus in *Yarosh* does not apply to her because there is "no uncertainty" that she was placed in a classified position at RSC as evidenced by DAS records. (Appellant's Brief, 29.) Thus, she argues paragraph five of the syllabus in *Yarosh* proves she became a permanent classified employee under R.C. 124.271. We disagree. As *Yarosh* suggests, labels are not dispositive of classified service status. Instead, the determining factor of status is where the employee's position falls under R.C. 124.11. Thus, the fact that DAS records indicated Glasstetter was classified prior to 2006 is not dispositive of her status. If DAS records were dispositive, Glasstetter would not have received a duties hearing at all because those records indicate she was unclassified at the time of her removal in August 2006.

{¶ 44} Though unclear, Glasstetter appears to claim her DAS records, at the very least, create a presumption she was in the permanent classified service as of 2000. She argues RSC did not present evidence that the HRA3 job posting and her DAS records

incorrectly designated her position as classified.  Thus, the SPBR had to find her classified regardless of what her duties were in the two years before her removal.

{¶ 45} However, in the mandamus action the Supreme Court found "throughout her employment with [RSC], Glasstetter remained in the same position—[HRA3]—with the same job duties." *Glasstetter IV* at ¶ 20.  Glasstetter does not refute this finding and has argued issue preclusion prevents it from being questioned in the present matter.  Glasstetter is correct.  The issue of whether her duties at RSC changed was a fact or point actually and directly at issue in the mandamus action involving herself and RSC and was passed upon by a court of competent jurisdiction.  *See Arth Brass* at ¶ 8, quoting *Fort Frye* at 395.  Thus, if Glasstetter's duties in the two years before her removal rendered her unclassified under R.C. 124.11, it is implicit she was always in the unclassified service at RSC and the HRA3 job posting and DAS records were incorrect.

{¶ 46} The SPBR found based on her duties in the two-year look back period, Glasstetter was in the unclassified service under R.C. 124.11(A)(9). As we explain below, the trial court did not abuse its discretion in finding the SPBR's order was supported by reliable, probative, and substantial evidence. Therefore, Glasstetter was always in the unclassified service at RSC, and former R.C. 124.271 never applied to her.

### c. *Former Ohio Adm.Code 124-1-04*

{¶ 47} Next, Glasstetter claims any change to her classified status was barred by a former version of Ohio Adm.Code 124-1-04, which provided:

> (A) An appointing authority is estopped to raise the illegal appointment of an employee to defeat the tenure rights which would have been due that employee had he been lawfully appointed.
>
> (B) After two years of service in a position in the classified service, an employee may become automatically certified under the provisions of section 124.271 of the Revised Code, notwithstanding the impropriety of his appointment.

"Appointment" means "placement of an employee in a position." Ohio Adm.Code 124-1-02(E). "Position" means "a group of duties intended to be performed by an employee." Ohio Adm.Code 124-1-02(S).

{¶ 48} Ohio Adm.Code 124-1-04(A) does not apply because RSC does not contend Glasstetter was illegally placed in the HRA3 position and should not have been performing the duties of that position. Instead, RSC maintains the appropriate label for Glasstetter's duties is unclassified service, not classified service. Ohio Adm.Code 124-1-04(B) does not apply because Glasstetter never served in a position in the classified service at RSC, i.e., her duties rendered her service unclassified.

### d. *Other Arguments*

{¶ 49} Glasstetter claims if we affirm the SPBR's order, the distinction between classified and unclassified employees would become meaningless.  An employer could change an employee's designation at any time, and the employee could not appeal the change to the SPBR. Glasstetter complains nothing in R.C. 124.34 "authorizes an appointing authority to remove a classified employee by simply saying she is * * * an unclassified employee as occurred in this case." (Appellant's Brief, 30.)

{¶ 50} Glasstetter is correct we previously found the SPBR cannot hear an appeal arising solely from a change in an employee's status from classified to unclassified without any other changes in the employee's position.  *Kittrells v. Ohio Lottery Comm.*, 10th Dist. No. 93APE08-1176 (Mar. 22, 1994).  The employee must demonstrate a resulting adverse employment action to trigger SPBR's jurisdiction under R.C. 124.03.  *Id.*  However, if the employee suffers an adverse action after a change in the employee's service designation, the SPBR's ability to conduct a duties hearing like the one in this case protects the employee from misconduct by the employer.  If the employee was in the classified service under R.C. 124.11, she is entitled to the protections of R.C. Chapter 124 regardless of the label assigned to her.  In contrast, if the employee, like Glasstetter, was in the unclassified service under R.C. 124.11, the employee was never entitled to those protections and lost nothing because of the change in designation.

{¶ 51} Additionally, Glasstetter argues if we affirm the SPBR's order, individuals who apply for jobs posted as "classified" can never trust that designation and rely on it to make important life decisions, even after eight years of service.  While we are sympathetic to Glasstetter's argument, we are bound by the precedent set forth in *Barley* that title or position classification used by appointing authority is not dispositive on the issue of

whether a position is classified or unclassified. Thus, her argument does not change the fact that she was in the unclassified service under R.C. 124.11.

### 3. Interpretation of R.C. 124.11(A)(9)

{¶ 52} The ALJ and the SPBR found Glasstetter was in the unclassified service under R.C. 124.11(A)(9), which provides that the unclassified service includes the "deputies and assistants of state agencies authorized to act for and on behalf of the agency, or holding a fiduciary or administrative relation *to that agency*." (Emphasis added). The ALJ recognized the Revised Code does not define a fiduciary or administrate relation and referenced the following definitions in Ohio Adm.Code 124-1-02:

> (C) "Administrative relationship" generally means a relationship where an employee has substantial authority to initiate discretionary action and/or in which *the appointing authority must rely on the employee's personal judgment and leadership abilities.* The average employee would not possess such qualities or be delegated such discretionary authority. Whether one position occupies an administrative relationship to another is a question of fact to be determined by the board.
>
> * * *
>
> (I) "Fiduciary relationship" generally means a relationship where the appointing authority reposes a special confidence and trust in the integrity and fidelity of an employee to perform duties which could not be delegated to the average employee with knowledge of the proper procedures. These qualifications are over and above the technical competency requirements to perform the duties of the position. Whether one position occupies a fiduciary relationship to another is a question of fact to be determined by the board.

(Emphasis added).

{¶ 53} The ALJ also referenced Ohio Adm.Code 123:1-47-01(A)(8) and (27) which, in part, defines an "assistant" and "deputy" as an employee with a fiduciary or administrative relationship "to the agency." Ultimately, the ALJ found Glasstetter was a deputy or assistant with an administrative relation to RSC based on the agency's reliance on her personal judgment and leadership abilities.

{¶ 54} Glasstetter complains R.C. 124.11(A)(9) and Ohio Adm.Code 123:1-47-01(A)(8) call for an evaluation of the employee's relationship to the agency, i.e., the seven-member RSC. *See* former R.C. 3304.12 ("The governor, with the advice and consent of the senate, shall appoint a rehabilitation services commission consisting of seven members."). In contrast, Ohio Adm.Code 124-1-02(C) evaluates the relationship between the employee and the appointing authority, i.e., Connelly. *See* former R.C. 3304.14 ("The rehabilitation services commission shall appoint an administrator to serve at the pleasure of the commission * * * [and] may delegate to the administrator the authority to appoint, remove, and discipline * * * such other professional, administrative, and clerical staff members as are necessary to carry out the functions and duties of the commission."). Given the different relationships evaluated by these provisions, Glasstetter maintains the ALJ's reliance on them "produced a result that is illogical, internally inconsistent and [which] rests upon improper inferences," rendering the SPBR's order adopting the ALJ's recommendation unlawful. (Appellant's Brief, 34.)

{¶ 55} However, the ALJ ultimately evaluated the relationship between RSC and Glasstetter and analyzed whether RSC relied on her personal judgment and leadership abilities. Glasstetter does not contend the ALJ was incorrect that if RSC relied on those qualities, an administrative relation exists for purposes of R.C. 124.11(A)(9). Thus, her complaint about the ALJ's citation to Ohio Adm.Code 124-2-02(C) elevates form above substance, and we reject it.[4]

### 4. Summary

{¶ 56} For the foregoing reasons, we find the SPBR's order was in accordance with law. We overrule the third and fourth assignments of error and the first assignment of error to the extent it challenges the legality of the SPBR's order.

---

[4] We note in her reply brief, Glasstetter suggests for the first time that reliable, probative, and substantial evidence did not support the SPBR's order because evidence showed she directly reported to RSC's assistant executive director, not Connelly or RSC, so RSC could not have directly relied on her personal judgment and leadership abilities. However, we will not address an argument raised for the first time in a reply brief. *See Huffer v. Brown*, 10th Dist. No. 12AP-1086, 2013-Ohio-4384, ¶ 10.

**D. The Trial Court did not Abuse its Discretion**

{¶ 57} In the remainder of her first assignment of error and in her second assignment of error, Glasstetter contends the trial court abused its discretion in finding the SPBR's order supported by reliable, probative, and substantial evidence.

{¶ 58} The ALJ made the following conclusions pertinent to our analysis:

> Testimony presented at record hearing indicated that [Glasstetter] had the authority to contractually bind the agency to contracts under $50,000, and had some discretion to define the terms of such contracts; I find that duties of this nature required [RSC] to rely on [Glasstetter's] personal judgment, see, *Rarick v. Bd. of Cty. Commrs.* (1980), 63 Ohio St.2d 34, and are characteristic of an employee who holds an administrative relation to an agency. [Glasstetter] also had oversight of the Human Resources Department and its employees. She was responsible for assigning work, evaluating employee performance, and ensuring that assignments were completely in a timely and appropriate manner. Performance of such duties would require [Glasstetter] to carry out agency policy in the supervision of her subordinates; I find that responsibilities of this nature necessitated [RSC's] reliance on [Glasstetter's] personal judgment and leadership qualities, and are characteristic of an administrative relationship. *Yarosh v. Becane* (1980), 63 Ohio St.2d 5.
>
> [Glasstetter] had oversight of her departmental budget and monitored expenditures to ensure compliance. She was a member of participated in the discussions of a number of higher management level committees, relaying information and advising committee members regarding Human Resources related issues. I find that these duties required [Glasstetter] to exercise her personal judgment.
>
> The duties performed by [Glasstetter] during the two-year time period examined at record hearing while not demonstrating a reliance by the agency on her personal integrity or fidelity sufficient to constitute a fiduciary relationship, did require the agency to rely on her personal judgment and leadership skills. Accordingly, I find [RSC] has demonstrated by a preponderance of the evidence that [Glasstetter] had an administrative relation to the agency.

(R. 17, Record of Proceedings.)

{¶ 59} Glasstetter contends once the ALJ found RSC's reliance on her personal integrity or fidelity was insufficient to constitute a fiduciary relationship, it was contradictory for the ALJ to find RSC relied on her personal judgment and leadership skills.  She argues an employer must rely on the integrity or fidelity of an employee who is permitted to exercise personal judgment in the execution of her job duties.  However, as noted above, the ALJ's report utilized the definition of fiduciary relationship in Ohio Adm.Code 124-1-02(I), which discusses the placement of "special confidence and trust in the integrity and fidelity of an employee to perform duties which could not be delegated to the average employee with knowledge of the proper procedures."  In his conclusions of law, the ALJ simply used a shorthand way of saying RSC's relationship with Glasstetter did not fit this definition. We find no contradiction in a finding that RSC relied on Glasstetter's personal judgment and leadership abilities but that such reliance did not rise to the level discussed in Ohio Adm.Code 124-1-02(I).  Not every decision an employee makes requires an employer to place special confidence and trust in her.

{¶ 60} Next, Glasstetter complains the ALJ and SPBR erred in finding her authority to bind RSC to contracts under $50,000 and limited discretion to define the terms of such contracts constituted evidence she had an administrative relation to RSC. She argues the Supreme Court's decision in *Rarick v. Bd. of Cty. Commrs.*, 63 Ohio St.2d 34, 37 (1980), compels the opposite conclusion.[5] In *Rarick*, the Supreme Court analyzed whether the Raricks, Geauga County's former building service superintendent and assistant superintendent, were in a fiduciary or administrative relationship with the county commissioners such that the Raricks were in the unclassified service.  The court stated that "[d]uties which are closely supervised by the appointing authority do not place a position in a fiduciary or administrative relationship with the authority; no special confidence and trust in an employee's abilities and integrity is involved." *Rarick* at 37. The court went on the find that the Raricks' ability to contract out for snow removal services, even to themselves, did not place them in either a fiduciary or administrative relationship with the commissioners.  *Id.*  However, the Raricks still had two duties that

---

[5] Glasstetter also complains the common pleas court misread *Rarick* as providing support for the limited scope of the hearing before the ALJ. However, regardless of whether *Rarick* supports the proposition for which the common pleas court cited it, we already found no error in the limited scope of the hearing.

placed them in the unclassified service: "the duty to purchase supplies through blanket purchase orders and the duty to supervise and arrange for the work of the building staff." *Id.* at 38.

{¶ 61} Glasstetter argues from *Rarick*, it is apparent an employee does not have an administrative relation to an agency solely because the employee has authority to make a contract on the agency's behalf, even with herself. She argues blanket purchase orders like the Raricks greatly differ from the types of contracts she could make at RSC. However, the snow removal contracts in *Rarick* were subject to approval by the commissioners. *Id.* at 34. In contrast, with blanket purchases orders, the Raricks could purchase supplies whenever they chose and did not have to account for their expenditures until after the money was spent, requiring trust in their honesty and judgment. *Id.* at 38-39. In the absence of evidence the contracts Glasstetter had authority to make were subject to approval, those contracts are more akin to the blanket purchase orders in *Rarick* than the snow removal contracts. Glasstetter's ability to enter into and, to some extent, write the terms of contracts on behalf of RSC supports the finding she had an administrative relation to the RSC.

{¶ 62} Additionally, as the common pleas court noted, the ALJ and the SPBR did not solely rely on Glasstetter's contracting authority to conclude she had an administrative relation to RSC. Instead, they relied on additional evidence on matters such as her oversight of the Human Resources Department and participation in higher management level committees. Glasstetter does not specifically challenge any of these findings. She generally argues her work at RSC was closely supervised, so she could not have an administrative relation to RSC. However, the only evidence she points to of this close supervision is her own testimony, which the SPBR was free to disbelieve. *See ATS Inst. of Technology* at ¶ 29, citing *Crumpler* at 528 (explaining the deference the common pleas court must give an administrative determination of credibility).

{¶ 63} Glasstetter also argues the common pleas court erred in stating she was hired into a position that was wrongfully listed as classified. Even though the ALJ and the SPBR did not explicitly make this finding, as we explained above, such a finding is implicit and correct. Therefore, we find no error in the court's statement.

{¶ 64} For the foregoing reasons, we conclude the common pleas court did not abuse its discretion in determining the SPBR's order was supported by reliable, probative, and substantial evidence.  Accordingly, we overrule the remainder of the first assignment of error, and we overrule the second assignment of error.

## IV. Conclusion

{¶ 65} Having overruled each of the assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____